**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jesse BYRD, Jr., Defendant-Appellant.**

**No. 84–2632.**

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1985.

Decided Aug. 19, 1985.

Janet Jannasch, Asst. U.S. Atty., Gerald D. Fines-U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Dorian B. Lasaine, Peoria, Ill., for defendant-appellant.

Before ESCHBACH and FLAUM, Circuit Judges, and DOYLE, Senior District Judge.*

* The Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin, sitting by designation.

ESCHBACH, Circuit Judge.

Jesse Byrd, Jr., appeals from his convictions of bank larceny and possession of stolen money. He contends that the district court erred in allowing him to be impeached by a prior criminal conviction and in allowing his alleged accomplice to testify about another crime. He also contends that he was not proved guilty beyond a reasonable doubt. We affirm.

I

On several occasions between October 13 and October 20, 1982, Sara Carlton withdrew a total of $13,400 without authorization from the account of Edna Busch at the Commercial National Bank of Peoria, Illinois. Carlton forged Edna Busch's name on the withdrawal slips. She testified that she had been coerced into this activity by Jesse Byrd.

According to her testimony, Carlton had known Byrd for seven or eight years, but he was not her boyfriend. They had smoked cocaine together several times, and at the time of the events leading to this prosecution she owed him $200 for cocaine. In October 1982 Byrd told Carlton that he had a bank statement belonging to Edna Busch, whom he believed to be dead, and that she was to go to the bank and withdraw money from the account, representing herself to be Edna Busch. She was reluctant to take part in the scheme, but Byrd reminded her of the money she owed him and threatened her with physical harm. After the first withdrawal, Byrd secured her continued cooperation by threatening to expose her to bank officials and the authorities.

Carlton testified that Byrd drove her to the bank each time and waited outside for her. Each time she gave the money to Byrd. She herself received only $1,500 of the entire amount withdrawn. She also testified that after the first withdrawal of $400 on October 13, she accompanied Byrd to the First National Bank of Peoria, where

he made a deposit of $300 from the proceeds into the account of his employer, Church's Fried Chicken. Byrd told Carlton that he had to make the deposit to cover a previous shortage that he had blamed on a theft.

Byrd, testifying in his own defense, said that he merely gave Carlton a ride to the Commercial National Bank on one occasion, the day he made the $300 deposit in the First National Bank. He testified that he made the deposit on October 14. He admitted that he and Carlton purchased and used cocaine that day. He denied taking her to the Commercial National Bank again. He admitted that Carlton gave him some of the money she withdrew on October 14. He admitted that statements from Edna Busch's account had come to his place of employment.

## II

### A. Evidence of Previous Convictions

 Byrd admitted on cross-examination that he had been convicted in 1976 of forgery and theft as a result of his handling of checks stolen from a construction company. He now contends that it was unfair and improper for the court to have admitted this testimony into evidence.

The admission of evidence is left to the sound discretion of the trial court, and we will reverse the decision of the trial court only for abuse of discretion. We find no abuse of discretion here. Rule 609(a)(2) and (b) of the Federal Rules of Evidence permits, for the purpose of attacking the credibility of a witness, the admission of evidence that he has been convicted of a crime, if the evidence is elicited from him, the crime involved dishonesty or false statement, and not more than ten years have elapsed since the witness was released from the confinement imposed for that conviction. In this case, all of these requirements appear to be straightforwardly satisfied. The prosecutor sought to introduce the evidence for the purpose of attacking Byrd's credibility, the evidence was elicited from Byrd himself on cross-examination, the crime of forgery involves

dishonesty, and only eight years had elapsed since Byrd's release from confinement.

The only possible question we see is whether the theft conviction, as distinct from the forgery convictions, should have been admitted. Theft is arguably not a crime involving dishonesty or false statement. Of course, if the conviction had been for felony theft, it might have been admissible under Rule 609(a)(1), which does not require that the crime involve dishonesty or false statement. But in the prior case Byrd was convicted of misdemeanor theft, pursuant to a plea bargain.

In *United States v. Papia*, 560 F.2d 827 (7th Cir.1977), we noted that courts have split on the question whether prior convictions for crimes involving stealing, without more, are admissible for impeachment purposes under Rule 609(a)(2). *Id.* at 846 & n. 13. We declined to decide the question, however, *id.* at 847, and have not subsequently decided it. We shall not decide the question in this case, either, because we are persuaded that if the admission of Byrd's theft conviction was error, it was harmless.

As we understand the record, Byrd was convicted of stealing certain checks and committing forgery with respect to them. Thus, while the theft was not accomplished by means of forgery, the convictions arose out of a single course of conduct involving the same checks. In these circumstances, we think that the theft conviction was so linked to the forgery convictions, which are clearly admissible under Rule 609(a)(2), that it was harmless to mention it to the jury along with those forgery convictions for purposes of impeaching Byrd's testimony.

In his brief Byrd does not focus on the theft conviction but attacks the admissibility of prior convictions generally under Rule 609(a). We do not agree with him that evidence of prior convictions, introduced for the purpose of attacking the credibility of a witness, is necessarily more prejudicial

than probative, and we decline to nullify Rule 609(a).

We note that at the start of the trial the prosecutor sought the court's permission to introduce evidence of Byrd's theft conviction, and that the court, after hearing defense counsel's objections, expressly permitted it. In addition, the court instructed the jury during voir dire that if the defendant testified, it might be brought out that he had been previously convicted of a criminal offense. The court explained that such evidence is not evidence of guilt of the charge for which the defendant was on trial and was only to be considered on the question of his credibility as a witness. Furthermore, in charging the jury, the court gave the following instruction:

> Evidence that the defendant has been convicted of a crime is to be considered by you only insofar as it may affect his credibility as a witness. It must not be considered by you as evidence of guilt of the crime for which the defendant is on trial.

We think that these careful instructions assured that the jury would not consider the theft conviction as evidence of guilt. It is highly unlikely that knowledge of an eight-year-old misdemeanor theft conviction would have so prejudiced the jury as to induce it to find Byrd guilty when otherwise it would have found him innocent, especially in light of the properly admitted evidence against him. Accordingly, we conclude that if it was error to admit evidence of the theft conviction, the error was harmless beyond a reasonable doubt.

### B. Evidence of Uncharged Misconduct

Sara Carlton testified that Byrd made a $300 deposit into his employer's account on October 13, 1982, out of the proceeds of a withdrawal from Edna Busch's account that Carlton had made that day. According to her testimony, Byrd told her that "he had to cover some money that was taken that he said he had got robbed, but really didn't." Byrd contends that the trial court erred in admitting this testimony, because the government did not prove that a theft or fake robbery took place.

In this circuit evidence of uncharged misconduct is admissible only if it meets the following requirements: (1) it fits within an exception recognized by Rule 404(b) of the Federal Rules of Evidence, (2) its probative value outweighs its prejudicial effects, and (3) the misconduct is proved by clear and convincing evidence. *United States v. Ostrowsky*, 501 F.2d 318, 321 (7th Cir.1974).[1] Rule 404(b) permits the admission of evidence of other crimes, wrongs, or acts to prove motive (among other things), but not to prove bad character. In this case the government's express purpose was to provide evidence of Byrd's motive. Surely a desire to make up a shortage in his employer's account for which he might be held responsible is a plausible motive for the sort of crimes with which Byrd was charged, and it is clear that Carlton's testimony is evidence that Byrd had such a motive. Furthermore, the district court expressly determined that the probative value of the evidence outweighed its prejudicial effect, a determination left to the sound discretion of the trial judge. *See United States v. McPartlin*, 595 F.2d 1321, 1325 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979).

The troublesome point is whether the misconduct was proved by clear and convincing evidence. The district court did not expressly apply this requirement, and we find nothing in the record that would enable us to conclude that it considered the question. Furthermore, our own examination of the record leaves us in doubt as to whether there was indeed clear and convincing evidence that Byrd mishandled funds of his employer.

---

**1.** Our cases contain variant formulations of this test. One often repeated variation, derived from *United States v. Feinberg*, 535 F.2d 1004, 1009 (7th Cir.), *cert. denied*, 429 U.S. 929, 97 S.Ct. 337, 50 L.Ed.2d 300 (1976), requires that the uncharged misconduct be similar to the crimes charged. This requirement may be appropriate when the uncharged misconduct is offered to show intent, but it appears to us inappropriate when the purpose is to show motive.

We have held that the direct, unimpeached testimony of a witness constitutes clear and convincing evidence that the acts to which the witness testified actually occurred. *United States v. Hyman,* 741 F.2d 906 (7th Cir.1984). But Carlton's testimony falls short. She did not witness the misconduct she reported; she only stated what Byrd said. Her testimony was not a direct quotation but bears the earmarks of loose paraphrase. Her testimony was vague as to the nature of the misconduct and lacking in details. It suggested but did not clearly describe an embezzlement. It can be read so that the only misconduct Byrd admitted was the making of a false statement to the effect that a robbery took place; that money was taken does not necessarily mean that Byrd took it.

For these reasons, we would hesitate to find that the government proved by clear and convincing evidence that Byrd engaged in the misconduct that his statement, reported through Carlton, suggests. But we hold nevertheless that there was no error in admitting that statement, because the government was not required to prove the misconduct by clear and convincing evidence.

In most cases in which the government seeks to introduce testimony that mentions or describes uncharged misconduct of the defendant, the testimony is offered to prove the existence of the uncharged misconduct, and the misconduct is offered as evidence of motive, opportunity, intent, etc., in accordance with Rule 404(b). For example, in *United States v. Cyphers,* 553 F.2d 1064, 1069–70 (7th Cir.), *cert. denied,* 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977), the court admitted testimony, in Cyphers's trial for bank robbery, that Cyphers asked a government informer to purchase $1,000 worth of heroin for him shortly after the robbery occurred. The testimony was offered to show Cyphers's motive for the robbery. Because the act of misconduct *was* the evidence of motive, the proof of motive depended essentially on the premise that the act of misconduct actually took place. If Cyphers did not in fact solicit the purchase of heroin, no motive was proved. In such circumstances, our rules quite properly require that the misconduct be proved by clear and convincing evidence. If the testimony leaves substantial room for doubt that the misconduct took place, its probative value is sharply diminished, and the danger that the jury will be prejudiced by it requires that it be kept from them.[2]

On the other hand, there are cases in which testimony that reports or describes uncharged misconduct is not offered for the purpose of supporting an inference from the misconduct to the defendant's motive, opportunity, intent, etc., but for some other purpose. In such a case, the probative value of the testimony for the purpose for which it is offered does not depend on the actual existence of the misconduct it reports. For example, suppose that a bank teller testifies that the defendant, in committing a robbery, pointed to a bulge in his coat pocket and said, "I've killed three people with this, and I'll kill you, too." The testimony is probative of the fact that the robber was armed. But its probative value does not depend on the truth of the robber's statement that he has killed three people. The testimony is not offered to prove that the robber killed three people in the past, in order to prove from that uncharged misconduct some fact material to the crime for which he is now on trial. Consequently, no purpose is served by barring the admission of the testimony unless the three previous killings are proved by clear and convincing evidence. It does not matter whether the killings took place or not. In such a case, the requirement of clear and convincing evidence does not apply.[3]

**2.** The offered testimony, standing alone, need not constitute clear and convincing evidence of the misconduct; additional evidence may be considered. But often, as in *Cyphers,* the testimony is the only evidence.

**3.** Without wishing to prejudge the question, we think that the sort of testimony to which this exception to the clear-and-convincing-evidence requirement is most likely to apply is testimony reporting a statement or other verbal act that

We hasten to add that even though the clear-and-convincing-evidence requirement is relaxed in cases like the one just described, the other requirements of the *Ostrowsky* test remain in force. The testimony must comply with Rule 404(b), and the court must determine that the probative value of the testimony outweighs its prejudicial effects. Even if the actual existence of the misconduct is not essential to the probative value of the testimony, the testimony nevertheless refers to uncharged misconduct, and if it is admitted, that information goes to the jury. The danger that the jury will be prejudiced by that information remains; consequently, there is as much reason to apply the remaining two *Ostrowsky* requirements, and to employ such safeguards as limiting instructions, as in any other case.

We recognize that the rules of evidence are sufficiently complex as they are and that additional subtle and refined exceptions are not welcome. We nevertheless believe that our limited exception to the *Ostrowsky* rule of clear and convincing evidence is necessary, lest probative evidence be excluded for a reason that has no application in the circumstances. Some courts of appeals have abandoned the clear and convincing requirement altogether in connection with evidence of uncharged misconduct. *See United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); *United States v. Salis-*

*bury,* 662 F.2d 738 (11th Cir.1981) (following *Beechum* ), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2907, 73 L.Ed.2d 1316 (1982). We are not prepared to take this step, for we think that the clear and convincing requirement has a legitimate function in circumstances where the actual existence of the misconduct is essential to the probative value of the testimony. Whether there are cases in which a lesser standard of proof than clear and convincing evidence may be appropriate is a question we leave for another day.

■ If it were for the jury to determine whether the clear and convincing requirement applies, we would hesitate on that ground to introduce our new exception. To give such an issue to the jury would only confuse it. But under Rule 104(a) of the Federal Rules of Evidence, the court determines the admissibility of evidence. The court, then, must apply the *Ostrowsky* test and consequently must determine, case by case, whether the clear-and-convincing-evidence prong of that test is applicable.[4] For the latter determination, the dispositive question is whether the probative value of the testimony depends essentially on the actual existence of the misconduct the testimony reports. If it does, then the misconduct must be proved by clear and convincing evidence; otherwise, not. To put it another way, if the nonexistence of the misconduct would not affect the probative value of the testimony

mentions a separate act of misconduct. Carlton's testimony was of this sort, as is the statement in our example, but the testimony in *Cyphers* was not. In *Cyphers* the defendant's statement did not mention a separate act of misconduct; it was the misconduct.

**4.** If the requirement of clear and convincing evidence applies, the court must apply it. Some courts have treated the admission of testimony of uncharged misconduct as a matter of conditional relevancy under Rule 104(b), requiring the judge to determine only that there is evidence from which the jury could find that the misconduct took place. *E.g., United States v. Dothard,* 666 F.2d 498, 502 (11th Cir.1982); *see also United States v. Beechum,* 582 F.2d 898, 913 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). On this approach, presumably, the testimony is ad-

mitted with instructions to the jury that it is to consider the testimony as evidence only if it finds that the misconduct it reports actually took place. We think such a procedure is inappropriate when testimony of uncharged misconduct is involved. The policy of the law is to shield the jury from evidence of uncharged misconduct unless the conditions for its admissibility are met. This policy rests on the recognition that such evidence has an inherent tendency to prejudice the jury. The policy is not well served by giving the jury the evidence with instructions that require it to make the final determination whether the evidence is admissible. *See generally* 22 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5249 at 527–28 (1978); *id.* Supp.1985 at 407; 2 D. Louisell & C. Mueller, Federal Evidence § 140 (Supp.1985).

that reports it, then the existence of the misconduct need not be proved by clear and convincing evidence.

We come now to the application of the foregoing analysis to the present case. Byrd's statement was offered through Carlton to prove one motive that might have prompted Byrd to commit the theft: the desire to make up a shortage in his employer's account for which he might be held responsible. Byrd's statement is evidence that he believed that there was such a shortage. The belief is sufficient to provide him with the motive. As long as Byrd believed that there was a shortage for which he was responsible, it does not matter whether there actually was, still less whether Byrd actually embezzled or otherwise mishandled his employer's money or made up a story about a robbery to cover himself. Byrd could have come to his belief by a mistake in addition, there being no actual shortage. The probative value of Byrd's statement as evidence of motive does not depend on whether the misconduct it reports actually took place.[5] Consequently, the government need not have proved by clear and convincing evidence that that misconduct took place. Because the district court properly applied the remaining requirements of *Ostrowsky*, we

hold that there was no error in the admission of Carlton's testimony as to Byrd's statement.[6]

We also think that even if it had been error to admit Byrd's statement, the error would have been harmless beyond a reasonable doubt. Sara Carlton testified that Byrd's main motive in carrying out the theft scheme was the desire to purchase cocaine and that he used the bulk of the money for that purpose. Since the total amount stolen was $13,400, the $300 in question was only a small part, and the jury would not have been left without evidence of motive if Carlton's testimony concerning it had been excluded. Furthermore, the court gave a limiting instruction immediately after the testimony, and we presume that the jury heeded it. Thus the jury would have considered the testimony only as evidence of motive and not as evidence of bad character. The court, as noted above, expressly found that the probative value of the testimony exceeded its prejudicial effect, a determination that we do not dispute. Furthermore, the court, in charging the jury, gave the following instruction:

> Evidence has been received concerning statements said to have been made by

---

**5.** We do not mean to suggest that in every case where testimony reporting uncharged misconduct is offered to prove motive, the actual existence of the misconduct is irrelevant. For an example to the contrary, see *United States v. Cyphers*, 553 F.2d 1064 (7th Cir.), *cert. denied*, 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977), discussed *supra*. The determination must be made case by case.

We think that Byrd's statement, taken in context, is also probative of the fact that he had possession and control of theft proceeds, although the government did not offer it to prove that fact. The value of the statement as evidence of possession and control of theft proceeds does not depend on the existence of the misconduct it reports. It would not matter if Byrd had for some reason lied; his statement would still be the explanation he gave for depositing $300 into his employer's account, a statement which adds to the proof that he had possession and control of $300 at the time, money that Carlton's testimony indicated came from the theft.

**6.** In *United States v. Tuchow*, 768 F.2d 855 (7th Cir.1985), we held that certain tape-recorded conversations were admissible against the defendants as "other acts" evidence probative of intent to commit the Hobbs Act violations with which they were charged. In one recording, defendant Tuchow made an offer to his barber to bribe a municipal court judge to dismiss a speeding ticket. To Tuchow's argument that the statement was inadmissible because there was no evidence that a bribery took place we replied that the statement itself was the "other act" in question. We explained that the government offered the statement "not to establish the fact that the defendant had completed an act of bribery, but to demonstrate that Tuchow believed, as he told [his barber], that he was capable of fixing the case." Slip op. at 12. Our treatment of Tuchow's statement is consistent with the analysis *supra*. Because the probative value of Tuchow's statement for the purpose for which it was admitted did not depend on whether Tuchow actually bribed a judge, the government did not have to prove by clear and convincing evidence that a bribery took place.

the defendant. It is for you to determine whether the particular defendant did, in fact, make the statements. If you find that the particular defendant did make the statements, then you must determine what weight, if any, you feel the statements deserve.

In determining what weight, if any, should be given the statements, you should consider all matters and evidence having to do with the statements, including those concerning the defendant's personal characteristics and the conditions under which the statements were made. Finally, we think that even if the testimony in question had been excluded, there would still have been more than sufficient evidence from which the jury could have found Byrd guilty beyond a reasonable doubt. There is no real possibility that the jury's verdict hinged on this testimony.

All of these facts and circumstances lead us to conclude that if there had been error in admitting Carlton's testimony as to uncharged misconduct of Byrd, it would have been harmless beyond a reasonable doubt.

C. Sufficiency of the Evidence

 Byrd contends that the evidence did not show him to be guilty beyond a reasonable doubt. The standard we apply is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Redwine*, 715 F.2d 315, 319, (7th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2661 (1984).

The principal evidence against Byrd was, of course, the testimony of Sara Carlton. We think that her testimony constitutes substantial evidence from which a jury could find Byrd guilty beyond a reasonable doubt. We do not ourselves attempt to assess Carlton's credibility; credibility determinations are left to the jury. Our inquiry is only whether her testimony was shown to be so incredible that no rational trier of fact could have believed her. We

have no difficulty in concluding that no such showing has been made. Cross-examination revealed some minor inconsistencies, chiefly involving dates and amounts of money, between her trial testimony and statements she had previously made. None of the inconsistencies affected any issue material to the case, nor were they sufficient to undermine her credibility generally. Byrd also points to the facts that Carlton received immunity from prosecution and that she is apparently under no compulsion to pay back to the bank the $1,500 she received from Byrd for her part in the scheme. These facts do not make her testimony so unworthy of belief that the jury could not rationally have believed it. We conclude that the jury was entitled to believe Carlton's testimony, and that the substance of her testimony was sufficient to support a verdict of guilt.

III

For the reasons stated above, the convictions of Jesse Byrd are

AFFIRMED.