**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bernard LUNDY, Defendant-Appellant.**

**No. 86–1036.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1986.

Decided Jan. 12, 1987.

Thomas J. Royce, Thomas J. Royce, Ltd., Chicago, Ill., for defendant-appellant.

Sharon E. Jones, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., U.S. Atty.'s Office, Chicago, for plaintiff-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and GRANT, Senior District Judge.*

CUDAHY, Circuit Judge.

Defendant-appellant Lundy challenges his jury convictions of arson, 18 U.S.C.A. § 844(i) (West Supp.1986), and mail fraud, 18 U.S.C. § 1341 (1982). Lundy contends that the district court erred in permitting a government expert to testify regarding the cause of the fire because the expert's opinion was not based on specialized knowledge, was not helpful to the jury and was unfairly prejudicial. Lundy also contends that the evidence was insufficient to support the jury's verdict of guilty beyond a reasonable doubt. We affirm.

## I.

In 1957 Lundy purchased the Yale Food & Liquor Mart ("Yale Mart") located in Chicago, Illinois. Lundy leased the premises of Yale Mart from the building's owner, James Jordan, Sr., beginning in 1957 for $550 per month, and after 1971 on a month-to-month basis for $650 per month. Lundy insured his business for approximately $400,000, covering personal property and business interruption, with a peak season endorsement. In April, 1982, James Jordan, Sr. died, and ownership of the building passed to his sons (the "Jordans"). After having the building appraised the Jordans decided that the rent should be more than tripled, from $650 per month to $2,200 per month. Lundy and the Jordans negotiated over the rent in early 1983 but could not reach any agreement. In late March the Jordans ordered Lundy to vacate the building by May 4, 1983.

During this period of early 1983 Lundy asked a store employee to check whether Lundy had all the keys needed to open the store and operate the alarm system, and to make copies of any keys he was missing. Lundy also asked the store manager to

* The Honorable Robert A. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation.

demonstrate to him how the alarm system worked. On Thursday, March 31, 1983, a $22,500 order of groceries arrived for the Easter weekend. Lundy directed that all of the empty boxes be stored in a shelf area in the back of the store, a practice Lundy previously had been warned constituted a fire hazard.

On Easter Sunday, April 3, Lundy helped close up the store shortly after 5 p.m., and was apparently the last to leave the store. At 5:27 p.m. the fire department received an emergency 911 call reporting a fire at Yale Mart. Firefighters arrived at Yale Mart approximately three minutes after the call was received and found the store "heavily involved in fire." During the next hour three successive requests for additional firefighters were issued from the scene, and approximately 130 firefighters were required to eventually control the fire by 6:30 p.m.

After the fire Lundy mailed three separate proof-of-loss statements to his insurance company. The first proof-of-loss statement was a sworn statement in which Lundy asserted that he did not cause the fire and had lost $355,000 worth of property. This claim was rejected by the insurance company, and Lundy followed with claims of $296,313 and then $288,452.

Investigations into the cause and origin of the fire suggested the fire was incendiary in nature, and Lundy was charged with one count of arson and three counts of mail fraud. A jury found Lundy guilty on all counts. This appeal followed.

## II. Expert Qualifications—Admissibility of Milla's Testimony

■ Lundy asserts in this appeal that the district court erred in permitting Detective Milla to testify for the government as an expert regarding the cause and origin of the fire. After qualifying as an expert— Detective Milla was a member of the Chicago Police Department Bomb and Arson unit—Milla testified that in his opinion the fire that destroyed Yale Mart was purposefully set—"incendiary in origin." See Trial Transcript ("Tr.") at 97. Lundy asserts

that Milla's expert testimony should have been excluded because it was not based on specialized knowledge that would assist the jury, see Fed.R.Evid. 702, because it was needlessly cumulative and because it was substantially outweighed by the risks of confusing the issues, misleading the jury and prejudicing the defendant unfairly, see Fed.R.Evid. 403.

It appears that Lundy never argued to the district court that Milla's testimony should have been excluded under Federal Rule of Evidence 403. See Tr. at 2, 20–22, 82. We therefore must determine whether the admission of Lundy's testimony was plain error in light of Rule 403. See United States v. Zabic, 745 F.2d 464, 471 (7th Cir.1984). Detective Milla was the second of the government's thirteen witnesses, the first of two arson experts. His testimony combined the results of first-hand investigation of Yale Mart, his experience gained investigating some 800 fires and his interviews with many of the people involved in the Yale Mart fire. His testimony included a detailed rationale for his opinion that the fire was purposefully set. Milla's testimony was not cumulative—it was the first testimony about the cause and origin of the fire. Nor was there substantial risk that Milla's testimony would confuse or mislead the jury or unfairly prejudice Lundy. On the contrary, Milla's testimony, like other such testimony, very likely assisted the jury in more fully understanding the events at issue; any prejudice that resulted from the testimony was caused by the events not the testimony. The district court committed no error at all, certainly no plain error, in admitting Milla's testimony when viewed under Rule 403's balancing test.

■ In admitting or excluding expert evidence under Rule 702 the district court has broad discretion and should be affirmed unless the decision is manifestly erroneous. See United States v. Davis, 772 F.2d 1339, 1343–44 (7th Cir.), cert. denied, —— U.S. ——, 106 S.Ct. 603, 88 L.Ed.2d 581 (1985); United States v. Watson, 587 F.2d 365, 369 (7th Cir.1978), cert. denied, 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979). Never-

theless, the district court must pay special attention to expert testimony. Because experts are given special latitude to testify based on hearsay and third-hand observations and to give opinions, *see* Fed.R.Evid. 702, courts have cautioned that an expert must be qualified as an expert, provide testimony that will assist the jury and rely only on evidence on which a reasonable expert in the field would rely. *See United States v. Buchbinder,* 796 F.2d 910, 917–18 (7th Cir.1986); *United States v. Windfelder,* 790 F.2d 576, 580 (7th Cir.1986); *United States v. Davis,* 772 F.2d at 1344; *United States v. West,* 670 F.2d 675, 682 (7th Cir.), *cert. denied,* 457 U.S. 1124 & 1139, 102 S.Ct. 2944 & 2972, 73 L.Ed.2d 1340 (1982); *United States v. Tranowski,* 659 F.2d 750, 754–57 (7th Cir.1981). Courts agree that it is improper to permit an expert to testify regarding facts that people of common understanding can easily comprehend. *See West,* 670 F.2d at 682; *Tranowski,* 659 F.2d at 755; *Bartak v. Bell-Galyardt & Wells, Inc.,* 629 F.2d 523, 530 (8th Cir. 1980).

Lundy contends on this appeal that Milla's testimony that the fire was purposefully set merely summarized facts fully comprehensible to the lay jury. *See* Lundy Brief at 27. According to Lundy, Milla's testimony as to the cause of the fire was based on Milla's non-expert opinions formed by interviewing various witnesses, nearly all of whom testified at trial. Milla concluded "arson," Lundy suggests, only by considering evidence of the alleged arsonist's opportunity, motive and plan (which a jury could equally well comprehend), rather than by evaluating technical or scientific evidence. We are not persuaded by Lundy's contentions.

A review of the record makes it clear that Milla's testimony was admissible as expert opinion testimony because of his qualifications as an expert, his presentation of very technical evidence and his reliance on standard investigatory procedures.

Lundy does not challenge Milla's qualifications as an expert in the cause and origin of fires. *See* Tr. at 2. And a brief review of Milla's testimony reveals that Milla presented very technical evidence. Milla testified to the jury about his arrival at the fire and his investigation later that evening. He explained how the burn patterns and the rapid rate of burning indicated the cause and origin of the Yale Mart fire. He testified as to why certain accidental causes were apparently not responsible for this fire. He testified about what his on-site investigation a day or two later revealed about the fire. *See* Tr. at 77–99, 153–63. Milla's conclusion that the fire was purposefully set was based on a combination of factors, many of which required a technical understanding of how fires begin and spread under different conditions. Such testimony explaining burn patterns and burn rate, and analyzing possible causes of the fire, is undoubtedly expert testimony utilizing specialized knowledge that assists the jury to comprehend the facts.

Lundy argues, however, that even if some of Milla's testimony is based on his expertise, his conclusion that it was arson is actually based on hearsay testimony about Lundy's motives, plan and opportunities. Lundy is correct to suggest that "expert" testimony based solely on hearsay and third-party observations that are adequately comprehensible to lay people would be improper to admit under Rule 702. *See, e.g., Salem v. United States Lines, Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). An arson expert cannot testify that he heard from an informant that the defendant torched the building and that thus in his expert opinion the defendant probably set the fire. However, hearsay and third-party observations that are of a type normally relied upon by an expert in the field are properly utilized by such an expert in developing an expert opinion. *See* Fed.R.Evid. 703; *United States v. Lawson,* 653 F.2d 299, 301–03 (7th Cir. 1981), *cert. denied,* 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). Milla presented uncontroverted evidence that interviews with many witnesses to a fire are a standard investigatory technique in cause and

origin inquiries. *See* Tr. at 94–95. In addition, Milla's opinion was also based heavily on his own investigation, which ruled out most accidental causes and suggested that an accelerant had been used. Milla never testified that Lundy or anyone in particular caused the fire. He only testified that in his opinion the fire was not accidental. District courts must ensure that expert opinion testimony is in fact expert opinion, not merely opinion given by an expert. In this case the district court did not abuse its discretion in admitting Milla's testimony regarding the cause and origin of the fire as expert testimony.

### III. Sufficiency of the Evidence

Lundy also argues in this appeal that the evidence was legally insufficient for the jury to convict him of arson and mail fraud. The standard of review of a district court's finding that sufficient evidence supports a guilty verdict is well established:

> Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict.

*Brandom v. United States,* 431 F.2d 1391, 1400 (7th Cir.1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634 (1971).. *Accord United States v. Thomas,* 774 F.2d 807, 811 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1218, 89 L.Ed.2d 329 (1986); *United States v. Weihoff,* 748 F.2d 1158, 1159 (7th Cir.1984); *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984). The evidence in this case was sufficient to permit a jury to find beyond a reasonable doubt that Lundy was guilty of the crimes charged.

### A. Arson Count

■ Lundy was convicted of violating 18 U.S.C. § 844(i), which provides:

> Whoever maliciously damages or destroys ... by means of fire ... any building ... or other real or personal property used in interstate or foreign commerce ... shall be imprisoned for not more than ten years or fined not more than $10,000, or both.

The government presented no direct evidence that Lundy set fire to Yale Mart. But viewing all the evidence in the light most favorable to the government, there was substantial circumstantial evidence permitting the jury to find Lundy guilty beyond a reasonable doubt. *Cf. United States v. Bradshaw,* 719 F.2d 907, 921 (7th Cir.1983) (circumstantial evidence as relevant as direct evidence in establishing guilt or innocence). The government presented evidence of Lundy's motives to set the fire, his plan and preparation to do so, his opportunity to carry out the plan and evidence that Yale Mart did not burn accidentally.

The government presented evidence of Lundy's mounting financial difficulties including credit problems, a decline in Yale Mart's sales and an imminent threefold increase in rent for the store. Tr. at 367, 560–61, 605. The evidence also showed that Lundy could not afford the rent increase and was advised to vacate the premises. Tr. at 367, 373. Evidence showed that Lundy stood to receive up to $416,000 under an insurance policy covering the store and contents. Tr. at 522–24.

Evidence allowed the jury to infer that Lundy planned and had the opportunity to commit arson. Several weeks before the fire Lundy asked for a complete set of keys to the store, including the alarm system, and asked how to operate the alarms. A few days before the fire Lundy ordered that empty cardboard boxes be stored in a place where Lundy knew they created a fire hazard and where in fact the fire apparently originated. All of these actions by Lundy were noticeable changes from his usual practice. *See* Tr. at 406–09. Lundy was the last person to leave the store immediately before the fire. Tr. at 414–16. One witness testified that as Lundy was locking up the store she helped him remove the key and he cautioned her not to turn the alarm on. Tr. at 504.

Evidence that the fire was not accidental included opinions by two qualified experts,

Tr. at 96–97, 271–72, as well as the speed and intensity with which the fire burned.

The parties have stipulated and we agree that Yale Mart operated in interstate commerce by purchasing liquor from outside the state of Illinois.

This evidence is not overwhelming. But it is the jury's task to weigh the evidence and the credibility of witnesses. There is no suggestion that the jury was improperly instructed. We find that the evidence as a whole, indicating, *inter alia*, motive, plan, preparation, opportunity and absence of accident, is sufficient to sustain the conviction of arson.

### B. Mail Fraud

 Lundy challenges the mail fraud convictions under 18 U.S.C. § 1341 apparently on the ground that the alleged fraud was not a fraud—because he did not set fire to Yale Mart, Lundy contends, it was not fraudulent to file the insurance claims for the loss. Section 1341 provides:

> Whoever, having devised or intending to devise any scheme ... for obtaining money or property by means of false or fraudulent pretenses ... for the purpose of executing such scheme ... places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

As outlined above, the evidence permitted the jury to conclude that Lundy set fire to Yale Mart. Accordingly, the jury properly could conclude that Lundy falsely represented to the insurance company that the fire was not purposefully set, *see* Tr. at 532, and that he caused the mails to be used to further the scheme to obtain money. *See* Tr. at 529, 557. Again, it is not contended that the jury was improperly instructed on the law. We find the evidence sufficient to sustain the conviction of mail fraud.

Therefore the judgment of the district court is AFFIRMED.