**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Salim FAKHOURY,**
**Defendant-Appellant.**

**No. 86–2583.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1987.

Decided May 26, 1987.

1416

Philip C. Parenti, Philip C. Parenti, Ltd., Chicago, Ill., for defendant-appellant.

Therese Cesar Garza, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY, RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Appellant Salim Fakhoury was charged with one count of attempted arson in violation of 18 U.S.C. § 844(i) and three counts of mail fraud in violation of 18 U.S.C. § 1341. After a seven-day trial, the jury found Mr. Fakhoury guilty on all counts charged in the indictment. The appellant challenges his convictions on the grounds that: 1) there was insufficient evidence to support the convictions, 2) evidence of prior misconduct was improperly admitted, 3) he received ineffective assistance of counsel, and 4) his right to confront an adverse witness was violated because the government did not disclose the identity of a confidential informant. For the reasons set forth in this opinion, we affirm the appellant's convictions.

I

Facts

The appellant and his father, Jamel Fakhoury, bought Casa Blanca Liquors & Groceries located in Chicago, Illinois in June 1982 for approximately $108,000. In August 1984, the Federal Bureau of Investigation (FBI) received a tip from an informant that an arson was being planned for the grocery store. Responding to this informa-tion, an FBI agent posed as an arsonist and, in a recorded conversation with the appellant, offered to burn the grocery store. The appellant declined the agent's offer. The FBI then conducted a surveil-lance of the store on September 23 and 24.

On September 25, a fire was set in the store. The fire fighters who arrived at the store testified that there was no indication of a forced entry onto the premises and that the store doors and windows were secure. The store's alarm system sounded when the fire fighters entered the store. Testimony indicated that the alarm system allowed only thirty seconds to turn off the alarm after the door contacts were broken.

The fire department officers discovered that a gasoline-type fuel coated the store, including the store's merchandise and records. The store's fuse box and wiring system had been "hot wired" so that a steady electrical current could continue un-interrupted to an outlet located behind the meat counter. Two orange extension cords were connected to the outlet and led to cans of gasoline placed in two separate areas of the store. The store was not destroyed because it was not vented and consequently there was an insufficient amount of oxygen to fuel the flames. In fact, the fire fighters had to vent the store from the roof before they opened the ground level doors to avoid an explosion. Fire investigators determined that the fire had been started intentionally.

The government introduced evidence to demonstrate the appellant's motive and op-portunity to commit the attempted arson. The appellant and Carl Maniscalco, the ap-pellant's brother-in-law, shared the only set of keys to the store. Mr. Maniscalco testi-fied that the keys for the store were in his possession on the night of the fire. How-ever, the appellant stated, in an interview with the FBI on the evening of September 25, that Mr. Maniscalco had dropped off the keys at his home at about 10:30 p.m. on September 24. The appellant possessed ex-perience working with electrical equipment because he had been employed at Danly Machine Company as an electrical assem-

bler for several years. Although Mr. Maniscalco testified otherwise, one of the appellant's neighbors testified that she saw Mr. Maniscalco deliver a package of orange electrical cords to the appellant's home in early September 1984.

The government also introduced evidence of both the store's and the appellant's deteriorating financial condition to demonstrate the appellant's motive to commit arson. The government offered evidence of a substantial number of insufficient checks drawn on the store's account, declining purchases from suppliers and reduced food stamp redemptions (both representing fewer sales), and $97,000 of debts owed to creditors. In addition, city health inspectors testified that the store's condition violated health code standards because the store's walls were unclean and post-dated food remained on the shelves. Further, various coupon redemption centers were seeking to recover money that they had remitted to the appellant for coupons he had redeemed on the ground that he submitted far more coupons than could have been used by the store's customers. Finally, the appellant's individual bank account declined from an initial balance of $18,972.29 in January 1984 to a negative balance of $410.66 in September 1984. The government also submitted evidence showing that on September 4, 1984, a $40,000 loss of earnings clause was added to the store's $150,000 insurance policy.

After the fire, the appellant sent three separate proof-of-loss statements to his insurance company. In all three statements, the appellant certified that he had not caused the fire. In the first statement, the appellant claimed estimated losses of $97,033.66. An adjuster from an independent adjustment firm handling the claim on behalf of the insurance company estimated that the appellant's claim was overstated by at least two-hundred percent. The appellant's second claim was identical to the first. In his third claim, the appellant claimed the same amount of losses but certified that they were his actual, rather than estimated, losses.

## II

## Analysis

### A. *Sufficiency of the Evidence*

Appellant contends that no rational trier of fact could have found him guilty beyond a reasonable doubt of attempted arson or mail fraud. In a challenge based on the sufficiency of the evidence, it is well-settled that this court will affirm the conviction "if 'after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Gabriel,* 810 F.2d 627, 633 (7th Cir.1987) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original). "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *United States v. Lundy,* 809 F.2d 392, 396 (7th Cir.1987) (quoting *Brandom v. United States,* 431 F.2d 1391, 1400 (7th Cir.1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634 (1971)). The evidence, viewed in the light most favorable to the government, was sufficient to allow the jury to find the appellant guilty beyond a reasonable doubt of both attempted arson and mail fraud. We will consider in turn the sufficiency of the evidence for each offense.

### 1. Attempted Arson

Appellant was convicted of violating 18 U.S.C. § 844(i) which provides in pertinent part:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building ... used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both. ...

The appellant contends that the evidence presented by the government was insufficient because there were no eye-

witnesses to the attempted arson, no fingerprints linking the appellant to the crime, and the evidence presented by the government was largely circumstantial. Appellant's Br. at 18. However, we have held that circumstantial evidence is as relevant as direct evidence in establishing a defendant's guilt or innocence. *United States v. Bradshaw,* 719 F.2d 907, 921 (7th Cir.1983). The government presented sufficient evidence that the fire was started intentionally. It also presented sufficient evidence of the appellant's motive, preparation and opportunity to set the fire.

Because the fire did not cause much damage to the store, the fire investigators could readily determine the cause of the fire and establish that it was started intentionally. The evidence submitted at trial showed that the outlet was "hot wired" to provide a steady supply of electricity and that the store's merchandise and records were coated with gasoline. To show the appellant's motive to attempt arson, the government introduced evidence of the appellant's mounting financial difficulties, including reduced sales, actions by coupon redemption centers to recover payments made to the appellant for redeemed coupons, and debts owed to suppliers and other creditors.

The government's evidence further showed the appellant's opportunity to set the fire. Evidence presented by the government at trial indicated that the appellant was in possession of the sole set of keys to the store on the night of the fire and that appellant's cousin delivered orange electrical cords, similar to those used to "hot wire" the outlet, to the appellant a few weeks before the fire. Further, evidence established that the appellant had experience working with electrical equipment and that the appellant was familiar with the alarm system so that he could enter the store and turn off the alarm before it sounded.

As stated in *Lundy:*

This evidence is not overwhelming. But it is the jury's task to weigh the evidence and the credibility of witnesses.... We find that the evidence as a whole, indicating, *inter alia,* motive, plan, preparation, opportunity and absence of accident, is sufficient to sustain the conviction of arson.

809 F.2d at 397.

2. Mail Fraud

Appellant was convicted of three counts of mail fraud under 18 U.S.C. § 1341 which provides in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice ... places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

■ As in the conviction for attempted arson, the government presented sufficient evidence to sustain the convictions for mail fraud. First, the government introduced expert testimony that the appellant's estimated claims were overstated by at least two-hundred percent. Second, the evidence submitted at trial was sufficient to allow the jury to find that the appellant had set fire to the store. Thus, the jury could have concluded that the appellant falsely certified in his insurance claims that he had not caused the fire. *See Lundy,* 809 F.2d at 397. Accordingly, there was sufficient evidence for the jury to find the appellant guilty beyond a reasonable doubt of mail fraud.

B. *Evidence of Prior Misconduct*

Appellant contends that the government's submission of evidence of his prior misconduct was improper because its prejudicial effect outweighed its probative value. Specifically, the appellant claims that the introduction of evidence pertaining to "food stamp fraud, food coupon fraud, income tax fraud, state withholding tax fraud, gambling, and selling outdated food products" was improper under Fed.R.Evid.

404(b) and 403. Appellant's Br. at 10. Further, while only one objection was raised at trial, the appellant maintains that the prosecutor's closing argument also impermissibly prejudiced him by repeatedly referring to his prior misconduct to impugn his character. We will address in turn the admission at trial of appellant's prior misconduct and the prosecution's references to the misconduct during closing argument.

### 1. Evidence of Prior Misconduct Presented During the Trial

■ The appellant characterizes the evidence introduced at trial as "tending to show that the appellant was involved in some type of food stamp fraud, food coupon fraud, income tax fraud, state withholding tax fraud, gambling, and selling outdated food products." Appellant's Br. at 10. However, the appellant's contention mischaracterizes the evidence presented at trial. While the government did introduce evidence of health code violations, suits filed against the appellant by coupon redemption centers, numerous bounced checks and outstanding debts, the prosecution did not directly introduce evidence of food stamp fraud, tax fraud or gambling.[1] The government contends that the evidence was properly admitted by the trial judge under Fed.R.Evid. 404(b) to show the appellant's motive for setting fire to his store. We uphold the district court's decision to admit this evidence.

We first note that a trial judge has " 'broad discretion when assessing the admissibility of proffered evidence' and may be reversed only upon a showing of abuse of discretion." *United States v. Buishas,* 791 F.2d 1310, 1313 (7th Cir.1986) (quoting *United States v. Latham,* 754 F.2d 747, 751 (7th Cir.1985)). We further note that defense counsel objected to the introduction of this testimony only once during trial.[2] In fact, defense counsel indicated in closing argument that his trial strategy was to refrain from objecting to the prior misconduct testimony. Defense counsel told the jury that "[i]f [the defendant] had something going on the side or if he made misrepresentations to the suppliers, or if he was puffing—you know, you heard the evidence. I didn't object. I want you to get the truth of exactly what happened." Tr. Vol. VII at 1148. The testimony of prior misconduct to which defense counsel failed to object will be reviewed under the plain error standard[3] while the admission of the evidence to which defense counsel presented a contemporaneous objection will be reviewed under the abuse of discretion standard.

This court has held that "evidence of uncharged misconduct is admissible only if it meets the following requirements: (1) it fits within an exception recognized by Rule 404(b) of the Federal Rules of Evidence, (2) its probative value outweighs its prejudicial effects, and (3) the misconduct is proved by clear and convincing evidence."[4] *United*

1. While the government presented evidence of sales and employees' wages claimed by appellant on his tax returns, this evidence was introduced primarily to show appellant's deteriorating financial condition rather than tax fraud. Further, evidence of food coupon fraud was introduced only indirectly as a means of showing the appellant's deteriorating financial position resulting from suits filed against him to recover money paid to him for redeemed coupons. Evidence that appellant had been involved in gambling only arose in response to the government's question concerning appellant's claimed $11,000 of gambling winnings on his tax return. Defense counsel, on cross-examination, clarified that these gambling earnings could result from winnings in the state lottery. While the government later used this evidence improperly in closing argument to impugn appellant's character, *see infra* at 1422–24, the

district court properly admitted this testimony at trial under Fed.R.Evid. 404(b) and 403.

2. Defense counsel objected to testimony regarding newspaper coupons located in Mr. Fakhoury's home. The trial judge ruled that the testimony was admissible for the limited purpose of demonstrating the defendant's motive, i.e. his deteriorating financial condition, to commit the attempted arson. To avoid prejudice to the defendant, the trial judge gave the jury a limiting instruction.

3. Rule 52(b) of the Federal Rules of Criminal Procedure provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

4. As noted in *United States v. Byrd,* 771 F.2d 215 (7th Cir.1985), another factor often considered

*States v. Byrd,* 771 F.2d 215, 220 (7th Cir. 1985); *see also United States v. Liefer,* 778 F.2d 1236, 1242 (7th Cir.1985); *United States v. Shackleford,* 738 F.2d 776, 779 (7th Cir.1984). We find that these requirements are satisfied in this case.

Fed.R.Evid. 404(b) provides that evidence of other wrongs is not admissible to prove the character of a person, but is admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The evidence of appellant's deteriorating financial condition was relevant to show his motive to attempt arson and to send fraudulent claims on his proof-of-loss statements to the insurance company. "Evidence that tends to show that a defendant is living beyond his means is of probative value in a case involving a crime resulting in financial gain." *United States v. Feldman,* 788 F.2d 544, 557 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). The prejudicial effect of this evidence to the defendant did not substantially outweigh its probative value. Further, the prior misconduct was proved by clear and convincing evidence. The government presented numerous witnesses and documentary evidence to show the appellant's debts, bounced checks, pending suits to recover money for redeemed coupons, and health code violations in the store. The admission of this evidence did not constitute an abuse of discretion and certainly did not constitute plain error.

### 2. Prosecutorial Misconduct During Closing Argument

The appellant claims that his convictions should be overturned because of numerous improper references during closing argument about the appellant and his prior misconduct. The closing argument is replete with comments maligning the appellant's character. For example, when recalling for the jury the evidence about the coupon redemption lawsuit, the prosecutor stated that he lied about having a larger store than he actually owned "to line his own pockets, because even though he was cheating, the skim off the store wasn't enough to feed his little greedy appetite, so he had to go into the coupon redemption business, too." Tr. Vol. VII at 1121–22. When recounting that the appellant claimed $8,000 in unemployment benefits from Illinois, the prosecutor commented that this constituted "[a]nother lie, another fraud, perpetrated by this man to line his own pockets." *Id.* at 1123. The prosecutor further maligned the appellant's character when he referred to the numerous checks bounced by him: "[$]65,000 worth of checks were bounced. Is that indicative of a store that's thriving or is that indicative of a man who is trying to cheat everybody he can, tell them a lie...." *Id.* at 1124. When recalling the health code violations in the store, the prosecutor used the highly provocative example of selling post-dated baby formula. "Well, ladies and gentlemen, I don't think I would want my worst enemy to serve their baby post-dated formula." *Id.* at 1126.

In rebuttal to defense counsel's closing argument, the prosecutor's remarks became even more reprehensible. The prosecutor suggested to the jury that the appellant may have been responsible for the death of his father that occurred prior to the attempted arson.

The other thing I want to talk about is the father's death. This is not a murder case. That's not to be decided here. But from where I'm sitting, I'll tell you a couple of things. Who stood to gain the most from the father's death? Who wanted to sell the store and wasn't allowed to by the father? Who was the number one son? Who was taking money from the store that Mr. Neville told you he complained about his own father, complained to a stranger? There are

---

when determining the admissibility of prior misconduct is whether the uncharged misconduct is similar to the crimes charged. "This requirement may be appropriate when the uncharged misconduct is offered to show intent, but it appears to us inappropriate when the

purpose is to show motive." *Id.* at 220 n. 1. Thus, we will not consider this factor in this case because evidence of the appellant's uncharged misconduct was introduced to show motive.

serious questions here, but they are not to be resolved in this case.

*Id.* at 1186–87. Further, the prosecutor attempted to elicit any prejudice the jurors might harbor against the appellant resulting from his Jordanian heritage.

> [The defendant] came to this country in 1974, and when he came to this country, he agreed to obey the law, to come in, into this land of opportunity, and to look for opportunities. And he did find one.... But it wasn't good enough for him. He wanted more, and he wanted more fast. He had big plans. He wanted quick, easy success.
>
> And American [sic] became not the land of opportunity, but the land of fraud, and we see one fraud unfold after the next.

*Id.* at 1197.

■ The prosecutor's comments during closing argument must be divided into two categories for the purposes of this appeal: the remarks to which defense counsel objected at trial and the remarks to which he did not make a contemporaneous objection. The standard of review for each category is different. For those comments to which defense counsel presented a contemporaneous objection, we must "determine whether those remarks were so prejudicial as to deprive the defendant of a fair trial." *United States v. Lewis,* 797 F.2d 358, 369 (7th Cir.1986), *cert. denied,* ── U.S. ──, 107 S.Ct. 1308, 94 L.Ed.2d 162 (1987). For those remarks to which defense counsel failed to object, we must review for plain error. *Id.* We shall analyze each category in turn.

Defense counsel made only one contemporaneous objection to the prosecutor's reference during his rebuttal argument to the appellant's prior misconduct.[5] When the prosecutor stated that the appellant was involved with unemployment fraud, defense counsel objected on the ground that there was no evidence presented during trial that the appellant was collecting unemployment benefits fraudulently. The district judge sustained this objection. Tr. Vol. VII at 1197.

■ In evaluating a claim of prosecutorial misconduct where defense counsel presented a contemporaneous objection, we must determine whether the prosecutor's statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* ── U.S. ──, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)); *see also United States v. Torres,* 809 F.2d 429, 435 (7th Cir.1987) (citing *United States v. Peco,* 784 F.2d 798, 805 (7th Cir.), *cert. denied,* ── U.S. ──, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986); *United States v. Hattaway,* 740 F.2d 1419, 1425 (7th Cir.), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984); *United States v. Zylstra,* 713 F.2d 1332, 1339 (7th Cir.), *cert. denied,* 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983)). "[T]he well-settled standard of review [is] that we are to consider the prosecutor's conduct not in isolation, but in the context of the trial as a whole, to determine if such conduct was 'so inflammatory and prejudicial to the defendant ... as to deprive him of a fair trial....'" *United States v. Chaimson,* 760 F.2d 798, 809 (7th Cir.1985) (citing *Zylstra,* 713 F.2d at 1339; *see also Peco,* 784 F.2d at 805). Applying this standard to the prosecutor's statement that the appellant was involved in unemployment fraud, we do not find that this comment was so inflammatory and prejudicial to deny the appellant a fair trial. The district judge sustained defense counsel's objection to this comment and instructed the jury both before and after closing arguments that the arguments of counsel were not to be considered as evidence.

---

5. Defense counsel made another contemporaneous objection, but it was not directed at the prosecutor's reference to the appellant's prior misconduct. Defense counsel objected to the prosecutor's statement that the wiring of the fuse box in and of itself convicted the appellant of attempted arson. In response to the objection, the district court admonished the jury that the arguments of counsel were not evidence in the case and that they were to rely only upon the evidence presented to determine the appellant's guilt or innocence. Tr. Vol. VII at 1193.

However, many of the prosecutor's remarks to which defense counsel failed to object were much more prejudicial and inflammatory. These comments, however, must be reviewed under the plain error doctrine. The Supreme Court has stated that "the plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)); *see also United States v. Lewis*, 797 F.2d 358, 369 (7th Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 1308, 94 L.Ed.2d 162 (1987). We must evaluate a case for plain error by viewing the claim not in isolation, but against the entire record. *Young*, 470 U.S. at 16, 105 S.Ct. at 1047.

Viewing the prosecutor's remarks in the context of the entire record, we find that they do not justify reversal of the convictions. While we find the conduct of the Assistant United States Attorney to be reprehensible, we find that the statements neither undermined the fairness of the trial nor contributed to a miscarriage of justice. First, as discussed previously, references to the appellant's uncharged misconduct were permissible under Fed.R.Evid. 404(b) and 403. Thus, although we do not condone the prosecutor's grossly improper statements, it was permissible for him to link the appellant's prior misconduct to his motive to attempt arson. This case, therefore, does not involve prosecutorial comment implicating specific constitutional provisions, such as the defendant's right to remain silent, but rather involves excessive and inflammatory commentary about the appellant's conduct on matters which, at least to some extent, were relevant to his motive to set fire to his store. *Compare United States v. Robinson*, 794 F.2d 1132, 1136 (6th Cir.1986) (plain error found where, "[b]y raising before the jury's eyes the spectre of defendant's silence, the prosecutor ... encouraged the jurors to make inferences unfavorable to the defendant based solely upon [his] right to remain si-

lent"), *cert. granted*, — U.S. ——, 107 S.Ct. 1282, 94 L.Ed.2d 141 (1987).

Second, the district court, immediately before and after closing argument and several other times during trial, instructed the jury that the statements of counsel were not evidence in the case. These repeated cautionary instructions alleviated any prejudice resulting from the prosecutor's disparaging remarks. *See United States v. Sawyer*, 799 F.2d 1494, 1507 (11th Cir. 1986), *cert. denied*, — U.S. ——, 107 S.Ct. 961, 93 L.Ed.2d 1009 (1987). Finally, while the evidence of appellant's guilt is not overwhelming, it is sufficient to eliminate "any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations...." *Young*, 470 U.S. at 19, 105 S.Ct. at 1048. Thus, on this record, we hold that the prosecutor's closing argument, although highly improper, did not constitute plain error.

While we do not believe that the misconduct of the prosecutor in this case justifies reversal of the conviction, we frankly do not understand why the trial judge allowed this unprofessional conduct to go unsanctioned. Remarks of this nature are reprehensible when uttered by any member of the bar. When they come from the mouth of a representative of the United States, they demean in a very special way the administration of criminal justice.

## III

### Ineffective Assistance of Counsel

The appellant contends that he was denied a fair trial because of ineffective assistance of counsel. Appellant claims that his trial counsel's performance was deficient because he left the courtroom during the government's direct examination of a witness and because he was chastised by the trial judge for such improper behavior. Appellant also raises the novel claim that trial counsel's failure to recuse himself because he had the same last name as a witness for the defense whose credibility was questioned by the government prejudiced the defendant. Appellant claims that "the jury, lead to distrust [the witness], ...

most probably was influenced to similarly distrust [trial counsel] ... because they shared the same last name." Appellant's Br. at 22. Lastly, appellant contends that trial counsel's statement, in a letter written to the district judge before sentencing, that had he known about the contents of the confidential informant's report, he would have advised his client to plead guilty, undermined the appellant's position at sentencing that he was innocent.

■ In analyzing ineffective assistance of counsel claims, we must determine whether the appellant has satisfied his burden of showing both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1013 (7th Cir.1987). However, a court need not assess both components of the test if the defendant makes an inadequate showing on one. As the Supreme Court noted, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069; *see also United States ex rel. Smith v. Lane,* 794 F.2d 287, 290 (7th Cir.1986).

■ In this case, we need not assess the performance component of the *Strickland* analysis because the appellant clearly has not satisfied his burden of showing prejudice. While trial counsel was reprimanded by the district judge for leaving the courtroom when the government was presenting its case, this incident would have little prejudicial effect on the jury's deliberations, especially since the trial judge spoke to counsel while the jury was not present. Further, appellant clearly was not disadvantaged by the fact that trial counsel and a witness shared the same surname. The first question defense counsel asked the witness after he identified himself was whether they were related. Tr. Vol. VI at 905. Therefore, there was no reason for the jurors to be prejudiced toward defense counsel because he shared

the witness's surname. Finally, the district judge specifically stated in the sentencing proceedings that he would disregard trial counsel's assertion in a letter that he would have advised appellant to plead guilty if he had known the contents of the informant's report. Therefore, this statement did not prejudice the appellant. Accordingly, we find appellant's contention that he was denied the effective assistance of counsel to be without merit.

## IV

### Right to Confront the Confidential Informant

Appellant contends that he was denied a fair trial because he was unable to confront the confidential informant who supplied the FBI with information that appellant's store was an arson target. The informant did not testify at trial, but FBI Agent Paul J. Vina testified that the FBI surveillance of appellant's store commenced as a result of the informant's tip. The government submitted two documents summarizing the information furnished by the informant to the court for *in camera* review. After reviewing the documents, the district judge found that they contained inculpatory evidence. Because the FBI was utilizing the informant in ongoing investigations and because the government was not planning to call the informant as a witness, the trial judge ruled that it would not disclose the contents of the documents to defense counsel. Tr. Vol. II at 58–59.

In evaluating whether the government must disclose the identity of an informant, the Supreme Court has indicated in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), that the courts must balance the "public interest in obtaining information necessary to apprehend those who have committed crimes against the defendant's interest in a fair trial." *United States v. Andrus,* 775 F.2d 825, 841 (7th Cir.1985). "Where the informer is a mere 'tipster,' disclosure of his identity will rarely be appropriate under the balancing test of *Roviaro.*" *United States v. Lewis,* 671 F.2d 1025, 1027 (7th Cir.1982).

Applying this balancing test, we hold that the district court correctly decided that there was no need to disclose the identity of the informant. The informant was not a witness at trial and the information he supplied merely initiated the FBI's investigation of appellant's store. Knowing the informant's identity would not have aided the appellant's defense. Therefore, appellant's right to confront witnesses was not violated by the district court's decision to maintain the confidentiality of the informant's identity.

### Conclusion

We find that the district court properly admitted evidence of appellant's prior misconduct and that the prosecutor's comments during closing argument did not constitute plain error. Further, appellant's rights to the effective assistance of counsel and to confront adverse witnesses were not denied. Accordingly, we affirm the judgment of the district court.

AFFIRMED.