Matthew M. GOETZ, Plaintiff–Appellee,

v.

Terry CAPPELEN, David Carlson, Gerald E. Broderick, and Robert Wunnicke, Defendants–Appellants.

No. 90–1675.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 18, 1991.

Decided Oct. 15, 1991.

Anthony Pinelli (argued), Chicago, Ill., Michael T. Norris, Schaumburg, Ill., for plaintiff-appellee.

Richard T. Ryan, Mark F. Smolens (argued), Flynn, Murphy & Ryan, Chicago, Ill., for defendants-appellants.

Before BAUER, Chief Judge, and POSNER and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

The facts of this case are disputed and confused. Plaintiff-appellee Matthew Goetz claimed that, on December 8, 1987, at approximately 4:00 a.m., he was arrested by the defendants-appellants Terry Cappelen, David Carlson, Gerald Broderick, and Robert Wunnicke (collectively, "the defendants" or "the officers"), all of whom were police officers employed by the City of Rolling Meadows, Illinois. Goetz testified that, at the time of his arrest, he was walking down the hallway toward his apartment at 4736 Arbor Drive in Rolling Meadows. As he approached his apartment, he noticed the defendants standing outside his door. Goetz and the officers apparently berated one another, which predictably resulted in physical confrontation. Goetz testified that Wunnicke approached him and told him that someone was making fake telephone calls and that they had better stop. Then, Cappelen stepped forward and, according to Goetz, poked Goetz in the chest, shoved him against a wall, and threatened Goetz with what the officers would do if he did not stop placing the calls.

The officers had a slightly different story to tell. They described how their 4:00 a.m. visit to Goetz's apartment represented their third attempt to restore peace and order to Goetz's domestic situation. Two times earlier that night they had responded to complaints of raucous fighting in Goetz's apartment. Each time they arrived at the apartment, they found Goetz hostile and abusive. When a third call came in just before 4:00 a.m., the officers again visited Goetz's apartment. They discovered that Goetz was not at home. As they turned to leave, they heard Goetz accost them verbally as he approached them in the hallway. According to the officers, Goetz greeted them with the words, "What the ——— are you doing here again?" A heated verbal exchange followed. The officers testified that Goetz then struck Cappelen in the chest with his fist. As Cappelen was knocked back by the blow, Carlson and Wunnicke stepped forward and told Goetz that he was under arrest.

What happened next is equally unclear: the officers claimed that Wunnicke attempted to take hold of Goetz's left arm as Goetz hit Carlson in the chest with his right fist. When Carlson and Wunnicke had taken hold of Goetz's arms, a brief struggle ensued. The legs of the grappling men became tangled and the three fell to the ground with Wunnicke on the bottom, Goetz in the middle, and Carlson on top. Goetz claimed, however, that he was knocked to the ground and that Cappelen jumped on top of him, causing Goetz great pain. Goetz was handcuffed and pulled to his feet by his arms. Cappelen led Goetz through the hallway, ramming his head and face into the stucco wall as they proceeded. Cappelen then dragged Goetz down the stairs and roughly placed him in the back seat of a police squad car. At the station, Goetz claimed that while he was seated on a stool, Cappelen came up to Goetz, placed his knee against his chest, and struck Goetz, causing him to fall off the stool. The officers testified, however, that no one kicked or struck Goetz and that

he was not mistreated at any time before or after his arrest.

Later that day, Goetz went to the Northwest Suburban Medical Center where he was examined by Percival Bigol, a physician's assistant. Bigol testified that he conducted a physical assessment of Goetz and found two superficial lacerations on the top of Goetz's head. He also noted two contusion hematomas over the left and right eyebrows, lacerations and abrasions on the right side of Goetz's face, a few contusions on his legs and forearms, and areas of tenderness over Goetz's ribs and on his back. The next day, Goetz was charged with two counts of aggravated battery for punching Cappelen and Carlson, and with resisting arrest. The case remained pending until November of 1988, when a jury in the Circuit Court of Cook County, Illinois, found Goetz not guilty on all charges.

On December 14, 1988, Goetz filed a complaint in the district court, alleging violations of his civil rights as guaranteed by the fourth and fourteenth amendments to the Constitution, which purportedly occurred during and after his arrest by the defendant police officers. Goetz brought his claim under Title 42 of the United States Code, Section 1983, which sanctions a civil action for the deprivation of constitutional rights. Goetz also sought damages for a pendent state law claim of malicious prosecution.

Goetz's complaint included a claim against the City of Rolling Meadows (the "City"). The City filed a Federal Rule of Civil Procedure 12(b)(6) motion ("12(b)(6) motion"), arguing that Goetz's assertion of municipal liability failed to state a claim upon which relief may be granted. The district court originally denied the City's motion, but when Goetz restated the claim in his first amended complaint, the court allowed the municipal claim to stand. The case was tried before a jury from December 27, 1989, to January 2, 1990. Before the case was sent to the jury for deliberation, the district court directed a verdict for the City on Goetz's claim of municipal liability. Against the individual police offi-

cers, however, the jury awarded Goetz $30,000 in compensatory and $20,000 in punitive damages. Several weeks later the district court entered judgment on the verdict, denying all post-trial motions. The defendants appealed.

The defendants make three claims on appeal: that they were denied a fair trial due to the district court's failure to grant the City's 12(b)(6) motion, resulting in the improper admission of irrelevant and prejudicial testimony; that the district court abused its discretion in submitting irrelevant documentary evidence to the jury; and that the defendants are entitled to a judgment notwithstanding the verdict. We consider each in turn.

To understand the nature of the defendants' charges regarding Goetz's assertion of municipal liability, it may be helpful to describe more fully the facts supporting that unsuccessful claim. In his original complaint, Goetz argued that the City of Rolling Meadows "has permitted or tolerated an unlawful practice of failure to adequately train, supervise or discipline its officers regarding the use of force during arrest." *See* Goetz Complaint at p. 7. To support this claim, Goetz alleged that, on July 27, 1987, defendants Broderick and Cappelen used excessive force in the arrest of one Mary Flynn–Motyka. Based on these allegations, Goetz asserted that the City had notice of, and permitted, Officer Cappelen's propensity to use excessive force, and that the City's failure to train, supervise, and discipline Officer Cappelen constitutes endorsement and encouragement by the City. Therefore, Goetz concluded, "the use of excessive force by Officer Cappelen and other police officers has risen to the level of a policy or custom." *Id.*

Because Goetz failed to allege properly that a municipal policy, custom, or usage existed and had a causal relationship to the actions of the defendant police officers so as to create local governmental liability, the City filed its 12(b)(6) motion. In response, Goetz (apparently realizing the absence of a basis for a claim of municipal liability) filed a motion to dismiss the City

as a party defendant, which was granted by the district court on April 5, 1989.

Six months later, Goetz filed his first amended complaint, once again purporting to state a claim against the City of Rolling Meadows. This time Goetz alleged additional facts regarding the arrest of Mary Flynn–Motyka and added three paragraphs describing Cappelen's arrest on one John Fiebig:

> 20. On July 13, 1986, defendant Cappelen, acting in his capacity as police officer of the Village (sic) of Rolling Meadows, arrested John T. Fiebig.
>
> 21. Also present at the arrest of John T. Fiebig was Officer John T. Freese.
>
> 22. At the time of that arrest and in the presence of Officer Freese, defendant Cappelen handcuffed John T. Fiebig and, after handcuffing him, struck and punched John T. Fiebig.

First Amended Complaint, ¶¶ 20–22. The City of Rolling Meadows renewed its previously filed 12(b)(6) motion to dismiss. The district court denied the City's motion and the case proceeded to trial.

■■■ The defendant officers now argue that the district court improperly denied the City's 12(b)(6) motion. Yet, that matter is not properly before this court. When the district court denies a motion under Rule 12(b)(6), it does not enter a judgment. In this case, the court entered judgment against Goetz on the issue of municipal liability by means of the City's motion for a directed verdict. Goetz has not appealed from that order; therefore, no final judgment, as defined by Federal Rule of Civil Procedure 54(a), is before us. Title 28, United States Code, Section 1291 provides for appeals from final orders of the district court resulting in judgment and disposition of the case. No such order was entered here. Therefore, the district court's denial of the City's 12(b)(6) motion is moot. *See Texaco, Inc. v. Cottage Hill Operating Co.*, 709 F.2d 452, 453 (7th Cir.1983) ("As a general rule, denials of motions to dismiss are not appealable.") (citations omitted).

Nevertheless, the defendants complain of the "inevitable prejudice" resulting from the admission of evidence which described Officer Cappelen's use of force during the arrests of Mary Flynn–Motyka and John T. Fiebig. By permitting Goetz to present the testimony of Flynn–Motyka about the circumstances of her arrest, and by permitting Goetz to cross-examine Officer Cappelen about the arrest of John Fiebig, the defendants contend that the district court in effect allowed the jury to render a verdict for Goetz based on the "wholly improper inference that these defendants had allegedly used excessive force in the past." *See* Brief for the Appellants at 31.

■■■ Yet, the defendants waived a clear opportunity to limit the prejudice of this evidence. After directing a verdict for the City on Goetz's municipal claims, the district court offered to give to the jury a limiting instruction in order to erase the influence of the evidence on which the defendants now base their claim of error:

> The Court: The whole incident is really irrelevant now to what issues are being submitted to the jury. I would, if I am requested, instruct the jury to disregard the incident. They may not want me to. I don't know.
>
> [Counsel for defendants]: I think even commenting about it at this time is not necessary.

Trial Transcript at 580–81.

Having declined the opportunity to minimize any potential prejudice, defendants cannot now complain that they are entitled to a new trial. In other words, the defendants cannot have it both ways—the defendants cannot refuse a limiting instruction and then claim on appeal that the evidence was unfairly prejudicial. If the evidence was as prejudicial as the defendants now assert, they should have moved to strike it, asked to limit it, or sought a mistrial. The failure to take these actions, including the explicit declination of the limiting instruction, clearly represents a strategic gamble on the part of the defendants—but a lost gamble is no basis for relief. As we declared in *Gonzalez v. Volvo of America*,

> [R]isky gambling tactics such as this are usually binding on the gambler. This court has not hesitated in the past to bind a party to its strategic decision to

sit silent in the face of claimed error by refusing relief when the party complains because the result is unfavorable.

752 F.2d 295, 298 (7th Cir.1985).

The defendants respond by pointing out that the limiting instruction proffered by the district court may not have had the desired effect. They cite *Joseph v. Brierton,* 739 F.2d 1244, 1247 (7th Cir.1984), where we commented on the uncertain efficacy of a limiting instruction. But the defendants' reliance on *Joseph* is misplaced. Had the defendants requested the limiting instruction and had the jury nonetheless returned the same verdict, then perhaps they might have asserted reasonably that, as was the case in *Joseph,* medicine stronger than a limiting instruction was needed to cure the prejudice of the challenged evidence. But the defendants chose not to take this action. Instead, they chose to permit the evidence to be considered by the jury with no limitations whatsoever. Thus, we hold that the defendants' declination of the limiting instruction waives their claim that they were prejudiced by the evidence describing other arrests.

In addition, the defendants argue that the district court erred in refusing to permit the jury to hear information regarding the conviction of Mary Flynn–Motyka, whose arrest Goetz offered to support his municipal liability claim. The defendants sought to introduce evidence demonstrating that the arrest of Flynn–Motyka resulted in her conviction for reckless and disorderly conduct, and resisting arrest. The purpose of this demonstration, argued the defendants, was to show that the officers' conduct in that case was appropriate. The district court held that the defendants' proffer was irrelevant to the question whether the City of Rolling Meadows maintained a policy of permitting officers to use excessive force. Therefore, the court barred Flynn–Motyka's convictions from evidence.

We note that the defendants carry a heavy burden when they seek to overturn the evidentiary rulings of the district court. The admission of evidence generally is left to the sound discretion of the district court and, therefore, we will reverse the court's decision only for an abuse of that discretion. *United States v. Byrd,* 771 F.2d 215, 219 (7th Cir.1985). We do not detect any abuse in this case. On the contrary, the district court properly reasoned that evidence of Flynn–Motyka's conviction had only tangential relevance to the issue of the City's liability for the behavior of its police force.

Moreover, the convictions at issue do not comport with the requirements of Federal Rule of Evidence 609(a), which governs the admission of criminal convictions for the purposes of impeachment. The crimes for which Flynn–Motyka was convicted—reckless and disorderly conduct and resisting arrest—are not felonies punishable by death or imprisonment in excess of one year, and do not involve dishonesty or false statement.[1] We note that the defendants had ample opportunity to cross-examine Flynn–Motyka regarding the events surrounding her arrest. Thus, the jury did hear the "whole story" about the behavior that led to her arrest. For all these reasons, we find that district court did not abuse its discretion.

The defendants' remaining two claims merit little discussion. First, the defendants claim that the district court erred in admitting into evidence two police reports prepared by Officer John Drezen, not a defendant in this case. Second, the defendants argue that the district court

---

1. Fed.R.Evid. 609(a) reads:

(a) *General Rule.* For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted ... if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

improperly denied their motion for a directed verdict, thereby entitling the defendants to judgment notwithstanding the jury's verdict. Neither of these claims persuade us to reverse the district court.

The district court did not abuse its discretion in admitting into evidence the two challenged police reports. These reports, which contained somewhat conflicting descriptions of Goetz's state of inebriation prior to his arrest, were relevant to Goetz's claim for malicious prosecution.[2] The fact that the reports described Goetz's behavior differently leads one to wonder what in fact Goetz did do to justify his arrest. Thus, the reports tend to make the existence of the fact that the defendants had reasonable grounds for arresting Goetz "more probable or less probable . than it would be without [the reports]." See Fed. R.Evid. 401. Moreover, the reports were relevant to the defendants' claims on defense. The defendants argued that Goetz "failed to use due care for his own safety in that his intoxication at the time of his arrest was the sole proximate cause of any alleged injuries." Defendants' Answer to First Amended Complaint at 9. Thus, the reports—both their contents and the manner in which they were prepared—tended to make more or less probable the truthfulness of the officers' testimony describing Goetz's condition before his arrest.

 Nor are the defendants entitled to judgment notwithstanding the verdict. The test of a jury verdict on appeal is not whether it was against the weight of the evidence. The test is whether there is a reasonable basis in the record for the verdict. *U.C. Castings Co. v. Knight,* 754 F.2d 1363, 1369 (7th Cir.1985) (quotations omitted). Thus, the jury's verdict will not be set aside if a reasonable basis exists in the record to support that verdict. *Id. See also Spesco v. General Elec. Co.,* 719 F.2d 233 (7th Cir.1983). Here, the record is replete with evidence of Goetz's injuries, no matter how insignificant the defendants believed those injuries to be. The jury chose

to believe Goetz, not the four police officers who testified that no unreasonable force was employed to effect Goetz's arrest. Because there is ample evidence in the record supporting Goetz's injuries, including photographs and the testimony of the physician's assistant who examined Goetz, we may not disturb the jury's decision.

For the foregoing reasons, the judgment of district court is

AFFIRMED.

---

**2.** Specifically, the first report stated only that Goetz was hostile to the officers; the second, which was dated almost three weeks later, stated that Goetz was intoxicated and antagonizing the officers.