UNITED STATES of America,
Plaintiff–Appellee,

v.

Gregory LEWIS, Defendant–Appellant.

No. 90–3584.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1991.

Decided Jan. 27, 1992.

Daniel P. Bach, Asst. U.S. Atty. (argued), Madison, Wis., for plaintiff-appellee.

Howard S. Goldman (argued), Tomlinson, Gillman, Travers, Gregg & Kravat, Madison, Wis., for defendant-appellant.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and WISDOM, Senior Circuit Judge.[1]

BAUER, Chief Judge.

Gregory Lewis was convicted of conspiracy and attempt to distribute cocaine and heroin in violation of 21 U.S.C. § 846 (1988). Lewis appeals his conviction and sentence, contesting several of the district court's evidentiary rulings and its application of the United States Sentencing Guidelines. We affirm.

## I.

Lewis was incarcerated at the Federal Correctional Institution in Oxford, Wisconsin (FCI-Oxford) when the events underlying this case occurred. Lewis worked in the prison factory. Richard Chaffee, a correctional officer, was the factory foreman. During the late fall of 1988, Lewis approached Chaffee, and asked Chaffee to bring some narcotics into the prison to "prove that [Chaffee] was [Lewis's] friend." Trial Transcript, 1–A–6 ("Tr."). Shortly thereafter, Chaffee brought a soda container full of alcohol into FCI-Oxford for Lewis, hoping this would be enough to convince Lewis that he was "all right". Tr. at 1–A–8. He left the alcohol for Lewis in a cabinet in Lewis's work area.

Apparently this wasn't enough, and Lewis asked Chaffee to pick up a package for him. The package was delivered to a former inmate, Larry Smith. Chaffee and Lewis knew Smith because Smith worked in the factory while he was incarcerated in FCI-Oxford. Lewis gave Chaffee Smith's address in Madison, Wisconsin, although Chaffee apparently knew where Smith lived because he had visited him after Smith was released. Sometime in December 1988, Smith called Chaffee to let him know the package had arrived. Chaffee drove to Madison the next day and picked up the package. Inside was a small box containing some cotton balls, a small bottle of perfume, and three "little round balloons." Tr. 1–A–10. Although he never tested the contents, Chaffee said he had "no doubt" that the balloons contained narcotics. Tr. at 1–A–12.

Chaffee placed these balloons inside a potato chip bag, and placed the bag in his desk at the prison factory. He told Lewis what he had done with the balloons, and then left the area. When he returned, the bag was gone and Lewis was smiling at him.

In February 1989, Lewis told Chaffee that Lewis's girlfriend, Susan DeMain, was coming to visit him from Texas and that she was bringing him drugs. A prison investigator monitored the calls between Lewis and DeMain and followed DeMain after she arrived at FCI-Oxford. Lewis asked Chaffee to meet DeMain in the FCI-Oxford parking lot, and described her automobile. Chaffee refused to meet her in the parking lot, but he drove to a nearby motel

1. The Honorable John Minor Wisdom, Senior Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

where he thought she was staying. Chaffee couldn't find DeMain's truck, so he went home. The next day DeMain called Chaffee's home (apparently Chaffee had given his number to Lewis, who gave it to DeMain) and set up a meeting. Chaffee drove to a nearby town and met DeMain and Theresa Enna, another inmate's girlfriend. The women followed Chaffee to an isolated area, where they gave him two balloons. Chaffee pocketed the balloons, returned to his van, and followed a somewhat roundabout route home. The next day, February 21, 1989, Chaffee took the balloons with him to work. He was confronted by two Bureau of Prison investigative lieutenants and an FBI agent. The officers searched Chaffee and his car. They found the balloons in Chaffee's glove compartment. Analysis revealed that the balloons contained 4.14 grams of cocaine (an "eightball" in the vernacular) and 3.85 grams of heroin. Both Chaffee and Lewis were indicted for conspiracy and attempt to distribute narcotics. Chaffee pleaded guilty to the conspiracy charges and testified at Lewis's trial. After a two-day trial, a jury convicted Lewis. Lewis appeals.

## II. Evidentiary Challenges

### A. *Chaffee's Testimony*

 Lewis objects to several of the district court's evidentiary rulings. The Assistant United States Attorney ("AUSA") questioned Chaffee about the first set of balloons—the ones Chaffee obtained from Smith in Madison. Chaffee never looked inside these balloons, and did not test the contents. The AUSA asked Chaffee what he believed was in these balloons. Lewis's counsel objected because the question called for speculation. To clarify his line of questioning, the AUSA attempted to lay a foundation for Chaffee's expertise on smuggling drugs into federal prisons:

Q. Mr. Chaffee, during your employment as a correctional officer at Oxford, were you familiar with any meth-

ods by which narcotics were say frequently smuggled into the prison?

A. Very much so.

Q. Did you ever hear of an occasion or know of an occasion in which drugs were smuggled into the institution packaged in balloons?

Mr. Goldman (counsel for Lewis). Objection. Leading.

The Court. Sustained

Q. What in your opinion, based on your knowledge would you say is the most frequent means for smuggling drugs into a federal institution?

Goldman. Objection. I don't know that we got a foundation for this witness to tell us about that yet.

The Court. Overruled.

A. The most common means of introducing narcotics into an institution is rolled up in balloons.

Q. Based on your experience and knowledge in that regard, did you have an opinion or belief as to what was in the balloons that you obtained in the package at Larry Smith's house?

Goldman. Objection. He's not an expert on this issue.

The Court. Overruled.

A. There was no doubt in my mind that it had narcotics of a sort in them.

Tr. at 1–A–11, –12.

Lewis contends that there was no foundation for Chaffee's expertise on smuggling drugs into prisons. Therefore, Lewis argues that Chaffee should not have been certified as an expert, or permitted to testify regarding drug smuggling. Chaffee never testified that based upon his training, or knowledge of any events other than the ones in which he participated, that he knew of a single case in which drugs were smuggled in balloons. It seems unlikely that, as a factory foreman, Chaffee would have been trained in such matters, or would have first hand knowledge of them.

Under Rule 702 of the Federal Rules of Evidence,[2] a trial court has broad discretion

2. Rule 702 provides:

Testimony by Experts

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact

to admit or exclude expert testimony, and its determination will be affirmed unless it is "manifestly erroneous." *See Carroll v. Otis Elevator Co.,* 896 F.2d 210, 212 (7th Cir.1990); *United States v. Davis,* 772 F.2d 1339, 1344 (7th Cir.), *cert. denied,* 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 581 (1985). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll,* 896 F.2d at 212. The trial judge failed to make this comparison. Although Chaffee knew how *he* smuggled drugs into the institution, the AUSA failed to lay a proper foundation for his knowledge of how others did so. Therefore, we believe the district court erred when it certified Chaffee as a drug smuggling expert.

■ Nevertheless, even if a district court has erred, reversal is required only if the error has affected "substantial rights." Fed.R.Crim.P. 52(a). *United States v. Foster,* 939 F.2d 445, 450 (7th Cir.1991) (reversal warranted only if error represented miscarriage of justice such that defendant probably would have been acquitted but for the erroneously admitted evidence). In the instant case, the error did not affect Lewis's "substantial rights." The contents of the first set of balloons were not pivotal to the government's case. Lewis was charged only with a single count of conspiracy and attempt to distribute narcotics based upon the second set of balloons. The evidence regarding the first set of balloons was introduced to show the defendants' modus operandi and plan. Moreover Chaffee and Lewis were charged with conspiracy. In order to prove a conspiracy, the government must establish that there is an agreement or meeting of the minds between the members of the alleged conspiracy. *See United States v. Butz,* 784 F.2d 239, 240–41 (7th Cir.1986). That Chaffee believed the first balloons contained narcotics is all the government needed to establish to show that Chaffee thought he was smuggling in drugs for Lewis in the bal-

loons. It is irrelevant, therefore, what the first balloons actually contained, if Chaffee believed they contained narcotics. Chaffee was caught red-handed with the second set of balloons, which were tested, and contained narcotics. Thus, the effect of Chaffee's testimony about the first balloons on the jury would have been slight. Lewis's remaining challenges to Chaffee's testimony are without merit.

**B. *Lewis's Post–Arrest Statement***

■ Next, Lewis complains that the trial court erroneously barred his introduction of his prior, consistent, out-of-court statement. We find that Lewis fails to satisfy the heavy burden imposed on parties seeking to overturn a trial judge's evidentiary rulings on appeal. "The admission of evidence generally is left to the sound discretion of the district court, and, therefore, we will reverse the court's decision only for an abuse of that discretion." *Goetz v. Cappelen,* 946 F.2d 511, 515 (7th Cir.1991) (citing *United States v. Byrd,* 771 F.2d 215, 219 (7th Cir.1985)).

The AUSA questioned Lewis at trial about a post-arrest interview.

Q. Do you recall being asked by the agents about whether or not you had ever received drugs from a correctional officer named Roger Chaffee?

A. Yes.

Q. Do you recall telling the agents at that time that you hadn't obtained any drugs from Roger Chaffee; but if you had you wouldn't tell the FBI?

A. That's right, because they approached me in the wrong way. They was appearing belligerent.

Tr. at 2–78. On redirect examination, Lewis's attorney attempted to introduce further testimony regarding Lewis's conversation with the FBI.

Q. In regard to what you told the FBI in your interview in Gretna, did you also tell them that you would not talk to them about the drug charge unless you consulted with an attorney?

Mr. Bach. Objection. That's hearsay.

---

in issue, a witness qualified as an expert by knowledge, skill, experience, training, or edu-

cation, may testify thereto in the form of an opinion or otherwise.

The Court. The objection is sustained. Tr. at 2–81. At a bench conference, Lewis's counsel informed the court that the defendant had said "If I did it, I wouldn't tell you; and I would consult with an attorney first." Counsel told the court that "I think I'm entitled to get the full statement in.... Just so they [the jury] know." Tr. at 81–82. The court continued to sustain the objection.

On appeal, Lewis maintains that he should have been permitted to testify as to his complete statement, either under (1) Rule 801(d)(1)(B) which permits the introduction of a consistent out of court statement to rebut an express or implied charge of recent fabrication, or (2) Rule 106 which provides that, when a statement or part thereof is introduced by a party, an adverse party may require the introduction of any other part that ought in fairness to be considered contemporaneously with it.

■ To preserve an issue for appellate review, a party must alert the district court and the opposing party to the specific grounds for the party's argument or objection. The specific premise for reversing an evidentiary ruling on appeal must be the same premise as that declared properly during trial. *United States v. Manso-Portes,* 867 F.2d 422, 426 (7th Cir.1989). The argument for admission of Lewis's statement under Federal Rule of Evidence 801 was not raised at trial. "[T]hat argument cannot be considered by this court, therefore, absent plain error." *United States v. Gill,* 909 F.2d 274, 277 (7th Cir. 1990) (quoting *United States v. Hudson,* 884 F.2d 1016, 1023 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990); *United States v. Fuesting,* 845 F.2d 664, 670 (7th Cir.1988). "Plain error requires 'a miscarriage of justice' which 'implies the conviction of one who but for the error would have been acquitted.'" *Id.* (quoting *United States v. Smith,* 869 F.2d 348, 356 (7th Cir.1989)).

We do not find that the district court committed clear error. Indeed, we do not find any error. The Rule 801(d)(1)(B) exception simply does not apply here. The Rule provides that prior consistent statements are admissible non-hearsay if four conditions are met: (1) the declarant testifies at trial and is subject to cross-examination; (2) the prior statement is consistent with the declarant's trial testimony; (3) the statement is offered to rebut an express or implied charge of recent fabrication or improper motive; and (4) the statement must have been made *before* the declarant had a motive to fabricate. *United States v. Monzon,* 869 F.2d 338, 342–43 (7th Cir.), *cert. denied,* 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989) (citations omitted) (emphasis added).

The government did not imply that Lewis changed his story at trial—Lewis testified at trial that he did not ask Chaffee to smuggle drugs into the prison for him, Tr. at 2–60, and he told the FBI when he was arrested that he had not smuggled drugs into the prison. Even if the government introduced the prior statement to show that Lewis had an improper motive to testify as he did, i.e., he lied at trial to avoid conviction, then Lewis has not satisfied the fourth requirement of Rule 801. Because he made the statement after he was arrested, Lewis had the motive to lie at that time to avoid prosecution.

■ Further, we do not believe that Rule 106 requires that the remainder of Lewis's statement to the FBI be admitted. The rule of completeness is designed to avoid misleading impressions created by taking matters out of context, and recognizes that repair work can be inadequate when it is delayed to a point later in trial. *See* Fed.R.Evid. 106 advisory committee's note. The portions to be admitted must be relevant, and they must explain or qualify the portion offered by the opponent. *United States v. Sweiss,* 814 F.2d 1208, 1211 (7th Cir.1987) (citing *United States v. Walker,* 652 F.2d 708, 710 (7th Cir.1981).[3]

---

**3.** The *Sweiss* citation to *United States v. Walker* erroneously indicates that it was an en banc opinion. The case was heard by Judges Swygert, Pell, and Cudahy. Judge Pell wrote the opinion.

In *Sweiss*, we outlined four factors to guide our analysis under Rule 106. In addition to being relevant, the remainder of the statement should be admitted if "it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." 814 F.2d at 1211–12 (citing *United States v. Soures*, 736 F.2d 87, 91 (3d Cir.1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985)). *See also United States v. Velasco*, 953 F.2d 1467, 1475 (7th Cir.1992).

Lewis contends that in fairness, the remainder of his statement should have been admitted, presumably to place the admitted portion in context or to avoid misleading the jury about the nature of his statement, or both. We do not believe, however, that the trial court abused its discretion by refusing to admit the remaining portion of Lewis's statement to the FBI. The total statement was, "If I did it, I wouldn't tell you; and I would consult with an attorney first." Tr. at 2–82. Lewis wanted to introduce the final clause about consulting with an attorney. We agree with the trial court that Lewis did not satisfy the requirements of Rule 106.

The trial court's exercise of discretion under Rule 106 involves

> weighing ... the adequacy of the repair work necessary to correct any potentially misleading impression caused by an incomplete presentation against "the waste of time and attention and the unfairness involved in blunting the proponent's presentation of his case when everything is required to be read at one time."

*Walker*, 652 F.2d at 713 (quoting 1 Jack Weinstein's Evidence (1979) ¶ 106[01] at

106–07). We might have admitted the statement if we were trying the case, because (1) the amount of time required to admit it would be negligible, (2) it would not have blunted the government's case due to its brevity, and, (3) Lewis sought to admit it on cross-examination, rather than when the government was making its case.[4] But these observations also point out the statement's minimal significance. Consequently, we believe the trial judge did not abuse his broad discretion by excluding it. *See United States v. Walker*, 652 F.2d at 713. We point out, however, that the objection that the statement was "hearsay" is in error; the appropriate objection was that it was irrelevant.

## C. *Jones's Recorded Recollection*

██ Lewis also contends that the trial court erred in admitting a report by FBI Agent Richard Staedtler. The AUSA called John Jones, one of Lewis's fellow inmates at FCI–Oxford. The AUSA asked Jones if he remembered Lewis saying that he could have drugs or alcohol smuggled into the prison with Chaffee's assistance. Tr. at 1–B–76. Jones could not remember Lewis saying anything about smuggling drugs or alcohol into the prison.

Staedtler interviewed Jones in June 1989, and prepared a report of the interview. Jones testified that he could remember being interviewed, but not telling Staedtler about the drugs or alcohol. The AUSA had Jones review the report in order to refresh his recollection of the interview, but Jones stated that he still could not remember any statements he made to the FBI. *Id.* at 77, 79. Jones testified that he told Staedtler the truth during the interview.[5]

---

**4.** Because the rule is designed to allow the entire statement to come in at one time, the strength of Lewis's objection under the Rule is weakened further.

**5.** The testimony on this point is a little unclear, but we believe that Jones testified he told the agent the truth:

> Q. The information that you provided to [Staedtler], was that truthful to the best of

your knowledge when you were interviewed? Did you tell him the truth when he asked you the questions?
> A. What did I—did I tell him the truth?
> Q. Yes.
> A. I told him what I knew, you know. What I heard and like that, yeah.
> Q. And what you told him was what you believed to be the truth; is that right?
> A. At the time I guess so.
> Tr. at 1–B–81, –82.

Staedtler took the stand and testified that he interviewed Jones, took notes during the interview, and accurately transcribed them into his report. The report was then offered as a prior recollection recorded under Federal Rule of Evidence 803(5).[6] Staedtler read the following portion of the memorandum to the jury:

> Around Christmas 1988 and again around New Year's 1989 Inmate Gregory Lewis, also known as 'Ice' or 'Iceman,' told him that he (Lewis) had received some heroin and cocaine from Correctional Officer Roger Chaffee. Also on a previous occasion Lewis gave him some commercial bourbon which Lewis said he had received from Correctional Officer Chaffee.

Tr. at 1–B–90.

Lewis made two objections at trial: first, that Jones actually recalled the events, and therefore the formal requirements of the exception to the hearsay rule had not been satisfied; second, that Jones never saw the statement after the interview until the trial. Tr. at 1–B–87. The second objection, although not explicit, seems to be that Jones did not adopt the statement while the events (either the statements by Lewis or the interview) were fresh in his memory. The district court admitted the statement. The court stated that Jones had insufficient recollection to testify and that he made the statement "when the matter was fresh in his memory or at least fresher, and he said that he testified truthfully at the time." *Id.* at 1–B–89.

On appeal, Lewis renews his objections to the admissibility of Staedtler's report. He argues that Jones had sufficient recollection of the matters contained in the report to testify fully and accurately about them. Jones testified three times that he could not remember Lewis telling him anything about drugs or alcohol, and he testified three times that he could not remem-

ber telling Staedtler anything about Lewis. *See* Tr. at 1–B–79. The trial judge properly held that the contention that Jones had adequate recollection to testify about the matters in Staedtler's report is without merit.

▪ Lewis's two other challenges to the admission of the report are based on the timeliness of the memorandum. Lewis bases his first objection on the delay between events detailed in the statement (i.e. Lewis's alleged statements to Jones) and the interview. Lewis did not raise this objection at trial. Lewis bases his second objection on the delay between the interview and preparation of the report, and Jones's adoption of the report. Lewis allegedly made the statements around Christmas of 1988, and in February of 1989. Staedtler interviewed Jones on June 13, 1989, and Jones saw the report on September 13, 1990, during a pre-trial interview. During the pre-trial interview and again during trial, Jones said the statement was correct and that he had told Staedtler the truth during the interview. Tr. at 1–B–82, –92. Lewis argues that Jones did not make or adopt the statement when the events were fresh in his memory.

Rule 803(5) does not have specific time constraints on the timing of the preparation and adoption of memoranda. "No attempt is made in the exception to spell out the ... contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate." Fed.R.Evid. 803(5) advisory committee note. In *United States v. Senak*, 527 F.2d 129 (7th Cir.1975), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976), this court considered, among other objections to the admission of a past recollection recorded, the Rule's timing requirements. As in this case, the appellant failed to object to the delay between the events and the creation of the memo-

6. In order for a memorandum to be admissible under Rule 803(5), four requirements must be satisfied. The memorandum or record must concern a matter about which the witness once had knowledge but now has insufficient recollection to testify fully and accurately. It must have been made or adopted by the witness when the matter was fresh in the witness's memory, and reflect that knowledge correctly. If admitted, the memorandum may be read into evidence, but may not itself be received as an exhibit unless it is offered by an adverse party. Fed.R.Evid. 803(5).

randum at the trial level, and raised it for the first time on appeal. Although the trial in the case occurred before the adoption of the current version of the Federal Rules of Evidence, district courts had been directed to use the new rules as guidelines, and the district court indicated that it intended to apply the new rules. *Id.* at 138. Because the objection to the first delay was raised only on appeal, we explained that we would reverse only if the error was so plain that the appellant was denied a fair trial. *Id.* at 139. The same standard applies to Lewis's first objection here.

In *Senak,* there was a three-year delay between the events described in the memorandum and the creation of the memorandum. *Id.* at 140. We stated that despite some authority requiring that the statement be recorded contemporaneously with the event, the better view

> is that the trial judge should not be rigidly bound by an inflexible rule but rather that it should be exercised on a case-by-case basis giving consideration to all pertinent aspects including the lapse of time which reasonably and properly bear upon the likelihood of the statement being an accurate recordation of the event to which the memory related.

*Id.* at 141. We refused, therefore, to "arbitrarily say any given length of time is too long for the statement-giver to have an accurate memory and for a proper application of the recollection recorded procedure." *Id.* The district court in *Senak* was careful to confine the admitted statement to factual matters only, and excised conclusory statements by the witness. We held that the introduction of the statement did not require reversal. *Id.* at 142.

We reach a similar conclusion in this case. Although the delay between Lewis's statements and Jones's interview was significant—approximately six months—we cannot say that the interval was so long that Jones could not have accurately recalled Lewis's statement during the interview. Jones did testify that the matter was "fresher" in his mind at the interview than at trial, Tr. at 1–B–82, although this hardly is compelling. Still, we cannot con-

clude on these facts that Lewis was denied a fair trial because the statement was admitted. Thus, we refuse to reverse the district court.

■ The second timeliness objection, however, was raised at trial. Therefore, we review the district court's ruling for an abuse of discretion. *Goetz v. Cappelen,* 946 F.2d 511, 515 (7th Cir.1991) (citing *United States v. Byrd,* 771 F.2d 215, 219 (7th Cir.1985)). Lewis objected to the delay between the interview and the adoption of the memoranda—from June 1989 until September 1990. The trial judge admitted the memorandum because Jones said he made the statement when the matter was "fresh in his memory or at least fresher," and he told Staedtler the truth. Tr. at 1–B–89. We believe that the stricture against arbitrary time limitations on the recording of memoranda applies with some force to the adoption of memoranda. There is one difference however. In situations where someone other than the witness prepares the memorandum, the preparer might make deliberate or careless mistakes. If there is a lengthy delay, unless the inaccuracies are egregious or extreme, the witness may be unable to correct them. Suppose a witness is interviewed and his statement is recorded. Some time later, after the events described and the interview itself fade from memory, the witness is asked to adopt the statement. If she knows she told the truth when she made her statement, but doesn't remember what happened or what she said precisely, only the recorder can verify the memorandum's accuracy. We believe, however, that the trial court is in the best position to gauge the significance of these difficulties, and that this is why arbitrary time limitations are inappropriate.

In this case, Jones said he couldn't remember whether Lewis said he could get drugs into the institution, or whether he told Staedtler that Lewis said so, but that he did tell Staedtler the truth. *See* Tr. at 1–B–78, –81, –82. Jones further testified as follows:

> Q. So when Special Agent Staedtler wrote this down, whenever he wrote it

down, what he wrote in that first sentence is not true?

A. I can't—I'm not saying he wroting [sic] a lie or anything. I'm just saying I can't remember Ice [Lewis] saying that. It might.

\* \* \* \* \* \*

Q. But what you're saying as the truth then and the truth now is that you don't know, you don't recall, rather, whether Mr. Lewis said that he could get drugs into the institution?

A. I'm saying just for a fact. Like did he come up and tell me say, "Look, I can get drugs into the institution." That's what I am saying. I don't know that for a fact that he did come. I can't remember him coming and telling me that. If he did tell me that, I can't remember. That's what I'm saying.

Q. Now, is it true that you told Special Agent Staedtler that you had heard these or you had heard that Lewis had said he brought drugs into the institution?

A. I might have said it. That's what I'm saying. I might have told him that too.

Tr. at 1–B–84, –85. In other words, we are forced to rely totally on the accuracy of Staedtler's rendering of Jones's statement. Staedtler testified that his report was a fair and accurate representation of Jones's statement. Tr. at 1–B–87. Staedtler further testified that when Jones first reviewed the memorandum during a pre-trial meeting, Jones said it was correct, but that he was not particularly willing to testify in court for the government as to its contents. *Id.* at 1–B–92.

Although we do not approve of the procedure Staedtler followed in this case, we believe that the district court did not abuse its discretion in ruling that the report satisfied the requirements of Rule 803(5). Jones testified the events were fresher in his memory when he was interviewed, and that he told Staedtler the truth. Staedtler testified he accurately transcribed his notes of the interview when he prepared the report, and that Jones adopted it during a pre-trial meeting. Tr. at 1–B–92. During the trial itself, Jones's faulty memory appears to have been worsened by his lack of enthusiasm for testifying in the government's case. *See id.* Because there were no indications that the report was inaccurate, and because the substance was corroborated by other evidence, in these circumstances we believe the trial judge properly exercised his broad discretion. The better practice, however, would be for the government to have witnesses examine interview reports shortly after they are prepared to ensure the reports are accurate.

## D. *Excluded Testimony*

 Finally, Lewis questions the propriety of the district court's exclusion of testimony by another FCI–Oxford inmate, Macon Billingsley. Lewis tried to introduce Billingsley's testimony that Billingsley asked Chaffee to bring whiskey into the institution for him during Christmastime of 1988. Lewis's counsel gave two grounds for admitting the testimony: to impeach Chaffee, and to suggest the possibility that the whiskey smuggled in during Christmastime of 1988 was intended for someone other than Lewis. Tr. at 1–B–6, –B–7, 2–107, –111. The district court refused to admit the testimony for two reasons. First, under Federal Rule of Evidence 608(b), extrinsic evidence may not be used to prove specific instances of conduct for impeachment purposes. Second, the court found that whether Chaffee was smuggling contraband for other prisoners was irrelevant to the question of whether he was smuggling for Lewis, unless there was an allegation that the drugs intercepted in this case were actually intended for another inmate.

The district court's reasoning was correct on both grounds. Rule 608(b) bars the admission of extrinsic evidence of prior conduct for impeachment purposes. *United States v. Perez,* 870 F.2d 1222, 1225 (7th Cir.), *cert. denied sub nom. Calderon-Abeja v. United States,* 493 U.S. 844, 110 S.Ct. 136, 107 L.Ed.2d 95 (1989). Because there was no allegation that Chaffee was confused about who the contraband was intended for, Chaffee's other smuggling ac-

tivities do not implicate his testimony that he smuggled for Lewis. *See* Tr. at 2–108. *See also Perez*, 870 F.2d at 1225. Moreover, Billingsley's testimony did not meet the relevancy requirements of Rule 404(b). Rule 404(b) states that evidence of other wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Fed. R.Evid. 404(b). Because there was no evidence that Billingsley would testify that the contraband Chaffee said he smuggled for Lewis was actually intended for or received by Billingsley, whether Chaffee also smuggled for Billingsley is irrelevant. Therefore, we find that Lewis's challenge to this evidentiary ruling is without merit.

### III. Sentencing Challenges

Lewis also contests two upward adjustments to his base offense level made by the district court in its Sentencing Guidelines calculations. The district court increased his base offense level two levels for his role in the offense under § 3B1.1, and two levels because Lewis's criminal history category did not properly reflect the seriousness of Lewis's criminal record under § 4A1.3.

■ To determine whether a district court's decision to depart is proper, we must determine first whether the stated grounds are legitimate, and then whether the degree of departure was reasonable. *United States v. Morrison*, 946 F.2d 484 (7th Cir.1991). The first question is a legal one, and "hence *de novo* in nature, whereas 'we will give considerable leeway to a sentencing court's determination' in considering whether the degree of departure was appropriate." *Id.* (quoting *United States v. Williams*, 901 F.2d 1394, 1396–97 (7th Cir.1990), *vacated on other grounds, Williams v. United States*, — U.S. —, 111 S.Ct. 2845, 115 L.Ed.2d 1014 (1991)). Thus when reviewing a factual determination made by a sentencing court, we accept such determinations unless they are clearly erroneous. 18 U.S.C. § 3742(e) (1988). *See also United States v. Jewel*, 947 F.2d 224, 235 (7th Cir.1991); *United States v. Ruiz*, 932 F.2d 1174 (7th Cir.), *cert. denied,* —

U.S. —, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991). We shall consider each departure in turn.

■ The district court's first two-level enhancement was based upon Lewis's role in the offense. Although Lewis maintained that he and Chaffee played equivalent roles in the smuggling venture, the district court disagreed. The district court stated:

I think from my observations of Roger Chaffee, both at the time that he was sentenced and at the time he testified in this trial and from everything I know about him . . ., is that he is a kind of a weak person and that he is fairly easily influenced and that Mr. Lewis was very adept at influencing him, very manipulative, and Mr. Lewis sensed Mr. Chaffee's weaknesses and played on those weaknesses to get Mr. Chaffee to assist him in this offense. . . .

Sentencing Hearing Transcript (S.H. Tr.) at 7.

The first step of our analysis requires that we determine whether a defendant's role in an offense is a proper basis for an upward adjustment in his base offense level. Section 3B1.1(c) explicitly provides that a defendant's base offense level should be increased by two levels if he acts as an organizer, manager, or supervisor. Thus, there is no question that the defendant's role is a legally adequate basis for departure. Moreover, the district court's factual determination was not clearly erroneous. Lewis talked Chaffee into smuggling in contraband so Chaffee could prove that Chaffee was Lewis's friend. Tr. at 1–A–7, –8. Lewis arranged for his girlfriend to bring the second set of drug-containing balloons to FCI–Oxford, and persuaded Chaffee to meet with her to pick them up. Lewis provides no support for his naked allegation that Chaffee and Lewis played equal roles. Without such support, we refuse to hold that the district court's finding that Lewis managed the conspiracy, or its two-level departure were clearly erroneous.

■ We also reject Lewis's challenge to the district court's second upward adjustment. The district court found that Lewis's criminal history category (VI) "serious-

ly underrepresents" the likelihood that he will continue to commit crimes. S.H. Tr. at 18. Under § 4A1.1, a defendant's criminal history category is calculated by adding up points for prior prison terms (the longer the sentence, the more points), and for crimes committed within two years of release from a prior sentence, or while on probation or parole. Category VI (the highest category) requires that a defendant have at least thirteen points. Lewis had 22 points, 9 more than necessary. The district court based its second departure on this disparity. S.H. Tr. at 17–18.

Lewis's contention that none of the criteria listed in § 4A1.3 justify this departure is erroneous. The section provides that departure is warranted when the defendant's "criminal history was significantly more serious than that of most defendants in the same criminal history category." Guidelines § 4A1.3. Lewis exceeded the Category VI minimum by nine points. Section 4A1.3(b) permits an upward departure if there are "prior sentences of substantially more than one year as a result of independent crimes committed on different occasions." Lewis had three prior sentences that exceeded one year: a two-year sentence for burglary; a three-year sentence for false statements to a grand jury; and a five-year sentence for burglary and theft. Although § 4A1.3(b) does not define "substantially more," the five- and three-year sentences are "substantially more" even if the two-year sentence is not.

We believe that the district court properly determined that the Guidelines allow upward departure when a defendant's point total far exceeds the level required to place him in the highest criminal history category. Indeed, the government pointed out that Lewis would qualify for category VIII or IX, if such categories existed. S.H. Tr. at 16. The district court's departure is bolstered by Lewis's two prior sentences that substantially exceed one year. Consequently, we refuse to find that the district court clearly erred when it increased Lewis's base offense level because his criminal history category significantly underrepresents his history and propensity for further criminal conduct.

IV.

For the foregoing reasons, the judgment and sentence of the district court is

AFFIRMED.